John Louis **THURLKILL**, Appellant,

v.

**STATE of Alaska**, Appellee.

No. 2735.

Supreme Court of Alaska.

June 25, 1976.

Bruce A. Bookman, Anchorage, for appellant.

Avrum M. Gross, Atty. Gen., Juneau, Joseph D. Balfe, Dist. Atty., Ivan Lawner, Asst. Dist. Atty., Anchorage, for appellee.

Before BOOCHEVER, Chief Justice, and RABINOWITZ, CONNOR, ERWIN and BURKE, Justices.

OPINION

ERWIN, Justice.

John Thurlkill appeals from a five-year sentence which was imposed upon his plea of guilty to the charge of selling amphetamines in violation of AS 17.12.010.[1] Thurlkill maintains that certain improper derogatory information placed in the presentence report tainted his sentencing and therefore the five-year sentence, which he asserts is excessive, must be reconsidered by the trial court.

## I. THE PRESENTENCE REPORT

With regard to the presentence report, Thurlkill refers to four basic areas in which the derogatory information is inaccurate and unverified. Specifically, he points to statements about his previous record, about the way his children were cared for, his living situation with respect to certain people at the time of his arrest and at the time the presentence report was written, and his relationship with his current and former wives.

The contemporary presentence report is quite detailed and includes a wide spectrum of information relevant to the sentencing process—as a consequence it occasionally contains errors. To safeguard against the utilization of improper information by the judge in fashioning a sentence, current procedures allow, except in extreme cases,[2] for disclosure of the report prior to the sentencing hearing and a concomitant opportunity by the defendant to refute any improper information therein. The compelling need for these safeguards was spelled out in a recent article on sentencing in Alaska:[3]

While it can be argued that a trial judge is able by virtue of legal training and experience to ignore irrelevant data in passing sentence, this does not dispose of a basic rationale underlying sentence appeals—rehabilitation of the offender by affording him an opportunity to assert grievances regarding his sentence. The judge may in fact be able to disregard unverified derogatory information, but it is doubtful whether a lay defend-

1. AS 17.12.010 provides:
   Except as otherwise provided in this chapter, it is unlawful for a person to manufacture, compound, counterfeit, possess, have under his control, sell, prescribe, administer, dispense, give, barter, supply or distribute in any manner, a depressant, hallucinogenic or stimulant drug.
   AS 17.12.110 provides:
   (a) A person who violates a provision of this chapter relating to the possession or control of depressant, hallucinogenic and stimulant drugs, when his possession or control is for his own use, is guilty of a misdemeanor and upon conviction is punishable by imprisonment for not more than one year, or by a fine of not more than $1,000, or by both.
   (b) A person who violates a provision of this chapter other than one mentioned in (a) of this section, or a person who violates a provision of this chapter relating to the possession or control of depressant, hallucinogenic and stimulant drugs, when his possession or control is for the purpose of sale or other disposal to another person, is guilty of a felony and upon conviction is punishable as follows:
   (1) for the first offense, by imprisonment for not more than 25 years, or by a fine of not more than $20,000, or by both;

(2) for the second and subsequent offenses, by imprisonment for any term of years or life, or by a fine of not more than $25,000, or by both.
(c) A person who violates a provision of this chapter by selling or otherwise disposing of a depressant, hallucinogenic or stimulant drug to a person less than 19 years of age is guilty of a felony and upon conviction is punishable by imprisonment for any term of years or life, or by a fine of not more than $25,000, or by both.

2. Alaska Crim.R. 32(c)(2) provides in part that:
   The report shall be made available . . . to the defendant unless the court enters on the record findings of reasons why the report would prove detrimental to the rehabilitation of the defendant or safety of the public.
   *See also* Federal Rule of Criminal Procedure 32(c).

3. Erwin, Five Years of Sentence Review in Alaska, 5 U.C.L.A.–Alaska L.Rev. 1.

ant will attribute such impartiality to him. Thus, the defendant may often believe his sentence is based in part upon incorrect allegations. His consequent reaction to the system which permits this may well hinder or destroy any rehabilitative effect of the sentence.[4]

Furthermore, we note that while the original function of presentence reports was solely to assist the judge in resolving the question of whether to employ probation in a given case, new uses for the information gathered by the report have been found in recent years. The use to which presentence reports are now put encompasses the entire range of the criminal process, including the decision to grant or deny parole. Since the report may follow the defendant long past the sentencing hearing, its accuracy is a valid concern for the defendant as well as others who are called upon to rely on it.

■ While elimination of improper information altogether is the recognized goal with respect to presentence reports, we are nevertheless of the opinion that the present format can continue to fairly serve the needs of the criminal justice system if the probation personnel, judges, prosecutors, and defense attorneys are conscientious in their duties.

■ Therefore, while the presentence report in the case at bar contains some inaccurate derogatory statements, we consider it determinative that at the sentencing hearing Thurlkill's attorney pointed out the defects in the report and that Thurlkill testified regarding the inaccuracies and called witnesses who gave testimony in opposition or explanation of the derogatory information. In addition, we note that the judge did not expressly consider any of the inaccuracies in imposing the sentence.

Thurlkill also maintains that the presentence report included unverified police contacts, which we view as distinguishable from unverified derogatory information. Specifically, Thurlkill points to a letter written to the probation officer from the Sheriff in Tucumcari, New Mexico, which stated that:

> I might also add for your information that it was believed at that time by local law enforcement agencies that the said John Thurlkill was involved in gambling after hours in his place of business, possession and distribution of marijuana, and of possession of stolen eight-track tapes; however, sufficient evidence was not available to present these cases to the District Attorney.

■ In *Waters v. State*,[5] this court disapproved of the consideration of unexplained police "contacts" or arrest records in determining the appropriate sentence in a criminal matter. In a later case,[6] we succinctly approved our holding in *Waters*:

> We would take this occasion to reiterate our holding in *Waters* and subsequent cases that the state is not free to refer to a defendant's prior police contacts during the sentencing process. An undue emphasis placed on prior police contacts may make it necessary to remand a case for a new sentencing hearing.[7]

In 1973, Criminal Rule 32(c)(2) was enacted to provide that, "No record of arrest or other police contacts shall be included in the [presentence] report." Because Thurlkill testified at the sentencing hearing about the allegations contained in the letter from New Mexico and his attorney discussed the matter in his argument to the court, we are of the opinion that the harm, if any, was not of such magnitude that the case need be remanded for that reason, particularly in view of the fact that the trial judge did not consider the police contacts in fashioning the sentence. We think it is clear, however, that our previous cases and the recently en-

---

4. *Id.* at 16 (footnotes omitted).

5. 483 P.2d 199 (Alaska 1971).

6. *Griggs v. State*, 494 P.2d 795 (Alaska 1972).

7. *Id.* at 798.

acted criminal rule evidence a strong policy against the use of police contacts in presentence reports.[8] Therefore, in future cases, whenever a report contains information regarding police contacts, upon request by the defense, the trial judge at the time of sentencing shall state on the record that he is not relying on that information in imposing the sentence.[9] It is our hope that this will negate any impression that the court is considering improper data in determining the appropriate type of sentence, and if it is to be imprisonment, its duration.

## II. THE SENTENCE

■ Since *State v. Chaney*,[10] this court has often had the occasion to discuss the general objectives of sentence review,[11] the standards of criminal justice which are embodied in Alaska's Constitution,[12] and the extent of this court's review in sentence appeals. Concerning this court's scope of review in sentencing matters, we have stated that:

> The scope of appellate review requires that this court make its own examination

of the record, focusing on the nature of the crime, the defendant's character, and the need for protecting the public. Such an independent examination of the justice of a particular sentence is necessary in order for the review process to function effectively. As we have frequently stated, our standard of review on a sentencing appeal is to determine whether the trial court's imposition of sentence was "clearly mistaken." [13]

With the foregoing in mind, we proceed in our evaluation of the sentence imposed in the case at bar.

The record reveals that Thurlkill, 40, has had previous encounters with the law. Specifically, he has two prior convictions for issuing checks without sufficient funds and a probation revocation thereon for failure to make restitution, all of which occurred in the early 1960's; and a 1973 conviction for possession of gambling devices, for which he received a $50.00 fine.

With regard to the instant offense, according to the presentence report and statements elicited from the defendant during

---

8. In a recent opinion by this court, *Layland v. State*, 549 P.2d 1182 (Alaska 1976), we noted:

  While this court has often cautioned that the trial court should not place undue weight on a defendant's previous police contacts during the sentencing process, we have approved of judicial consideration of "verified information concerning additional crimes" which did not result in actual convictions, ". . . where the defendant is informed of the information and given an opportunity to explain or admit it." *See Hixon v. State*, 508 P.2d 526 n. 1 (Alaska 1973); *Adams v. State*, 521 P.2d 516, 517 (Alaska 1974).
  *See also* our opinion in *Evans v. State*, 550 P.2d 830 (Alaska 1976). Therefore, the proper vehicle for the inclusion of police contacts or arrests in the sentencing process is through sworn testimony at the sentencing hearing and not via the presentence report.

9. However, we take this occasion to announce that if the inclusion of police contacts made the presentence report manifestly unfair, we would feel compelled to remand the case for resentencing. We therefore urge that the probation personnel act responsibly in this area.

10. 477 P.2d 441 (Alaska 1970).

11. Four basic objectives of review have been noted: (i) to correct the sentence which is excessive in length, having regard to the nature of the offense, the character of the offender, and the protection of the public interest; (ii) to facilitate the rehabilitation of the offender by affording him an opportunity to assert grievances he may have regarding his sentence; (iii) to promote respect for law by correcting abuses of the sentencing power and by increasing the fairness of the sentencing process; and (iv) to promote the development and application of criteria for sentencing which are both rational and just. These objectives were derived from the ABA Project on Minimum Standards for Criminal Justice, Standards Relating to Appellate Review of Sentences, Standard 1.2 (Approved Draft 1968).

12. Article 1, § 12 of the Alaska Constitution provides that "[p]enal administration shall be based on the principle of reformation and upon the need for protecting the public."

13. *Perrin v. State*, 543 P.2d 413, 415 (Alaska 1975) (footnotes omitted).

the sentencing hearing, Thurlkill sold drugs as a means of support for approximately five months prior to the time of his arrest. Moreover, he stated that he had traveled to Fairbanks on several occasions to transact narcotics business. Concerning the reasons why he engaged in the sale of amphetamines and marijuana, Thurlkill stated in part:

It was right at wintr [sic], I was jobless (thru no fault of mine) and I had just brought my three children up here to live with me, (not knowing at that time that I was jobless) . . . . The rent was past due and the landlord gave me an eviction notice, for something that had happened while I was visiting my children over the X-mas Holidays [sic]. Not ever being in this predicament before, and always being able to support my family in the way they should be. So when a friend of one of my roomates [sic] suggested getting a 1b of grass and selling it to raise the rent money I jumped at the chance not realizing what road this would lead me too [sic], so he went and got the 1b. and sure enough after we bagged it up it didn't take but just a few hours to get rid of it and all of the sudden I had some money in my pockets for just a little bit of effort. After many reasons of self justification of why should I keep dealing because people were just eager to get rid of thier [sic] money, so I did. Then came the speed which seemed like people wanted that more than the other and it turned over faster, so I started dealing speed until I got arrested for selling to a policewoman and Army sargent [sic].

The offense for which he was arrested took place in Thurlkill's home when a police agent paid $125.00 for approximately 500 amphetamine tablets.

In light of the foregoing, it would appear that Thurlkill was neither a "titan of the narcotics business nor a mere user,"[14] rather, that he was a retail merchant of drugs. At the sentencing hearing the judge indicated that he placed a great deal of weight on the quantity of sales and the fact that Thurlkill engaged in the activity for the express purpose of making money.[15]

In a recent opinion this court held that possession of marijuana by adults at home for personal use is constitutionally protected.[16] However, in reaching that decision we noted that it

appears that effects of marijuana on the individual are not serious enough to justify widespread concern, at least as compared with the far more dangerous effects of alcohol, barbiturates and amphetamines.[17]

The State legislature has not prohibited the use of amphetamines altogether, but because of concerns as to the safety of the drug when used improperly, has determined that it should not be distributed without the approval of a medical doctor. Recognizing that the widespread use of amphetamines will have a detrimental impact on the community's health and welfare, the State, via its police power, has made it a criminal offense for members of the general public to engage in the distribution of this drug.

That the use of contraband drugs has increased significantly in recent years can-

14. *Waters v. State*, 483 P.2d 199 (Alaska 1971). In *Waters* we set out four groups of drug offenders in descending order: (1) Smuggling or sale of large quantities of narcotics or possession of large quantities for sale; (2) Smuggling or sale of small quantities of narcotics or possession of small quantities for sale; (3) Possession of narcotics without intent to sell; and (4) Marijuana offenses. We think Thurlkill falls somewhere between group one and group two.

15. *See Meyers v. State*, 488 P.2d 713, 715 (Alaska 1971).

16. *Ravin v. State*, 537 P.2d 494 (Alaska 1975).

17. *Id.* at 509–510.

not be questioned.[18] In our view, then, the unauthorized sale for profit of harmful substances to the citizens of this State is conduct which merits a great deal of concern.

When considering the goals of protection of the public, deterrence of the accused and others from engaging in similar criminal conduct, and reaffirmation of societal norms embodying condemnation of lawful drug sales,[19] we cannot say that the sentencing court was clearly mistaken[20] in imposing a five-year sentence.

AFFIRMED.

---

18. Drug Use in Anchorage, Alaska, 223 J.Am. Med.Ass'n 657 (1971).

19. This court has recognized the following goals of criminal sanctions: (1) rehabilitation of the convicted offender into a noncriminal member of society; (2) isolation of the offender from society to prevent criminal conduct during the period of confinement; (3) deterrence of the other members of the community who might have tendencies toward criminal conduct similar to those of the offender; (4) deterrence of the offender himself after release; (5) community condemnation of the individual offender, or in other words, reaffirmation of societal norms for the purpose of maintaining respect for the norms themselves. *See Perrin v. State*, 543 P.2d 413, 414–15 (Alaska 1975); *State v. Chaney*, 477 P.2d 441, 444 (Alaska 1970). "To make a reasoned sentence decision, the sentencing judge must determine the priority and relationship of these objectives in any particular case." *Nicholas v. State*, 477 P. 2d 447, 448 (Alaska 1970).

20. *See Meyers v. State*, 488 P.2d 713 (Alaska 1971) (defendant convicted of selling a large quantity of amphetamines, mescaline and other drugs, eight-year sentence with two years suspended affirmed); *Wright v. State*, 501 P.2d 1360 (Alaska 1972), (defendant convicted of selling LSD, six-year sentence affirmed).