Glen R. SANDVIK, Appellant,

v.

STATE of Alaska, Appellee.

No. 2738.

Supreme Court of Alaska.

May 6, 1977.

Barbara J. Miracle and Brian C. Shortell, Anchorage, for appellant.

Glen C. Anderson, Asst. Dist. Atty. and Joseph D. Balfe, Dist. Atty., Anchorage, Avrum M. Gross, Atty. Gen., Juneau, for appellee.

## OPINION

Before BOOCHEVER, C. J., and RABINOWITZ, CONNOR, ERWIN and BURKE, JJ.

RABINOWITZ, Justice.

Glen R. Sandvik appeals from a sentence of twenty years' imprisonment with eight years suspended, imposed after his plea of guilty to the offense of negligent homicide under AS 11.15.080.[1] At issue on this sentence appeal is whether the presentence report's detailed information about the fifteen-year-old victim so tainted the sentencing process as to require resentencing. Additionally, it is contended that the sentence is excessive.

On June 13, 1975, Glen Sandvik, while driving an automobile under the influence of alcohol, struck and killed Loretta McCarthey, a fifteen-year-old bicyclist. Mr. Sandvik pled guilty to the offense of negligent homicide, and prior to sentencing, a detailed and comprehensive presentence report was submitted. One section of the report was entitled "The Victim" and included information about the deceased, her school activities, exemplary character, plans for the future and the reaction of her parents to her tragic death.[2]

1. AS 11.15.080 specifies:

   *Negligent homicide.* Every killing of a human being by the culpable negligence of another, when the killing is not murder in the first or second degree, or is not justifiable or excusable, is manslaughter, and is punishable accordingly.

   Under the provision of AS 11.15.040 the punishment for manslaughter is by imprisonment for not less than one year or by more than twenty years.

2. This section of the record stated:

   Loretta McCarthey was born January 21, 1960 at St. John's Hospital in Detroit, Michigan. She was the youngest of four children born to Mr. and Mrs. Robert McCarthey. Loretta left the Detroit area with her family, October 28, 1965, when her father took a position with the City of Anchorage in the Traffic Engineering Department. The family then moved to their present location at the Old Goldcreek Lodge, located on the Old Glenn Highway, in May, 1969.

   The victim's activities at school included playing trumpet in the school band and physical education activities. At home, she was involved in woodcarving and candle making. Loretta had constructed her own dresser and had expended her own money for the required materials. She had constructed her own water bed just two days prior to her death. Loretta missed honor roll on only two occasions at the Palmer School System, and upon completing her freshman year, she had a 2.9 grade average. Among the victim's self-giving qualities, she never judged anyone; she was always ready to assist her fellow man. On several occasions, she did socialize with Steve Huckle, a crippled boy, in order that he not feel a complete outcast. On another occasion, Bob Voit was attempting to win a ring at a carnival in Palmer. After he spent several dollars at this attempt, Loretta spent $.50 of her own money, won the ring, and gave it to Bob.

   Loretta was working at the Palmer Theater, as well as the soda fountain at Bert's Drugstore, in Palmer. She was saving her money for future education. Her future ambitions included modeling school and theater work.

   The victim was well-known and quite popular in the Palmer area. On the day of her funeral, the Palmer Drug Store closed for the first time in known history, and the victim's fifth grade teacher arrived from out of state. Three hundred or more persons attended the funeral, and the Palmer High School now wishes to erect a tomb on her behalf. The local credit union in Palmer, has developed a trust fund to be given as a scholarship during the year that Loretta would have graduated.

   The victim's father, Robert McCarthey, feels bitter and cannot understand why he must exchange his daughter's life for that of the defendant. He does not want the defendant to ever drive a vehicle again and, although bitter, feels that the Court should be allowed to take its course. He states that the defendant is a very aggressive individual when drinking and has threatened people under this condition.

   Mrs. McCarthey is much more bitter than her husband and would not discuss the matter. Her only statement was: "We have lost everything."

   Mr. McCarthey feels that the defendant murdered his daughter, but nothing can bring her back. He states that his wife has lost all emo-

Counsel for appellant filed a motion requesting that the judge refrain from reading the report and order· a new presentence report or alternatively, that he appoint another judge to hear the arguments against the report and then impose sentence, or that if he heard the arguments against the presentence report, that another judge be assigned for sentencing. The motion was denied. In imposing sentence, however, the superior court stated:

I think that it is a very comprehensive and precisely written presentence report. It does contain matter that seems to be extraneous and not fully within the guidelines set down under the rule for presentence reports but, as I have explained to Mr. Drathman, those areas where I am not allowed to review, I have not taken into consideration. Particularly, I have not taken into consideration, and do not in my sentencing take into consideration the background of the victim, or the analyses and educational and the promises that the victim might have had toward a better community. I can understand full well why the presentence

and probation officer went to great extent to do that research and present it to the court but, under the determination of objectivity in this matter, I am not considering that whatever.

We first must consider whether it was improper to include the questioned material in the report. If so, we must then determine whether the error was of such a nature as to adversely affect the sentencing process. Finally, we shall consider the claim that the sentence was excessive.

No case has been presented to us involving the question of whether detailed information about the victim of an offense, such as set forth in the Sandvik presentence report, may properly be included in a presentence report. We note, however, that Alaska's applicable rule of criminal procedure neither explicitly provides for nor prohibits the inclusion of such information in the presentence report.[3]

A detailed explanation of the suggested content and scope of presentence reports is set forth in the American Bar Association Standards Relating to Probation, Standard 2.3.[4] The categories of items recommended

tions, and the only thing that keeps him alive is the thought that his baby daughter is with God. He still finds himself crying and, in the middle of the night, he is awakened by his wife, lying weeping and softly crying.

3. Criminal Rule 32(c)(2) delineates the contents of the presentence report in the following manner:

*Report.* The report of the presentence investigation shall contain any prior criminal conviction including a finding of delinquency of the defendant and such information about his characteristics, his financial condition, and the circumstances affecting his behavior as may be helpful in imposing sentence or in granting probation or in the correctional treatment of the defendant, and such other information as may be required by the court. No record of arrest or other police contacts shall be included in the report. The report shall be made available to the state's attorney and to the defendant's attorney in all cases and to the defendant unless the court enters on the record findings of reasons why the report would prove detrimental to the rehabilitation of the defendant or safety of the public.

4. Standard 2.3 provides:

2.3. Content, scope and length of report.

Presentence reports should be flexible in format, reflecting differences in the background of different offenders and making the best use of available resources and probation department capabilities. Each probation department should develop gradations of reports between:

(i) a short-form report for primary use in screening offenders in order to assist in a determination of when additional and more complete information is desirable. Short-form reports could also be useful in courts which do not have adequate probation services;

(ii) a full report, which normally should contain the following items:

(A) a complete description of the offense and the circumstances surrounding it, not limited to aspects developed for the record as part of the determination of guilt;

(B) a full description of any prior criminal record of the offender;

(C) a description of the educational background of the offender;

(D) a description of the employment background of the offender, including any military record and including his present employment status and capabilities;

(E) the social history of the offender, including family relationships, marital status,

to be included in the presentence report furnish support for the inclusion in presentence reports of information pertaining to the victim. We note that the standard explicitly states that a full presentence report should normally contain

> a complete description of the offense and the circumstances surrounding it, not limited to aspects developed for the record as part of the determination of guilt.[5]

The state, in its brief, acknowledges the marginal relevancy of the detailed information concerning the youthful victim which was included in the presentence report in the case at bar. In the state's view such information was not "particularly relevant" to the determination of an appropriate sentence because

> . . . Glen Sandvik did not select his victim; the very nature of the crime he committed and the facts surrounding it reflect that the identity of the victim was a matter of circumstance. Sandvik's criminally negligent conduct was, in a sense, directed at the members of society as a whole and not towards any particular person. (footnote omitted)

■ Although we agree in part with the state's position we take a somewhat different view of the problem at hand. We believe that the presentence report should contain basic information pertaining to the victim or victims of the crime. For the sentencing court cannot accomplish the full panoply of penal objectives articulated in *State v. Chaney,* 477 P.2d 441 (Alaska 1970), and its progeny, by sentencing in an informational vacuum. Generally the victims of antisocial conduct should be considered in the sentencing process, especially in cases where there is a specific intent on the part of the offender to harm a particular individual or individuals. Clearly information regarding such victims is encompassed within the objective of providing the sentencing court with "a complete description of the offense and the circumstances surrounding it" in the presentence report.

Our disagreement with the state's position centers on the contention that presentence information as to the victim has diminished relevancy, if from the nature of the crime one can conclude that the "identity of the victim was a matter of circumstance." The short answer to the state's position is that there are numerous crimes and myriad factual situations where the identity of the victim is "a matter of circumstance," yet the impact of the crime on the victim is a relevant circumstance surrounding the commission of the offense and thus can properly be included in the presentence report.[6]

■ At the core of appellant's appeal is the assertion that "the lengthy remarks contained in the presentence report concerning the character and background of the victim are so highly inflammatory as to

---

interests and activities, residence history, and religious affiliations;

(F) the offender's medical history and, if desirable, a psychological or psychiatric report;

(G) information about environments to which the offender might return or to which he could be sent should probation be granted;

(H) supplementary reports from clinics, institutions and other social agencies with which the offender has been involved;

(I) information about special resources which might be available to assist the offender, such as treatment centers, residential facilities, vocational training services, special educational facilities, rehabilitative programs of various institutions to which the offender might be committed, special programs in the probation department, and other similar programs which are particularly relevant to the offender's situation;

(J) a summary of the most significant aspects of the report, including specific recommendations as to the sentence if the sentencing court has so requested.

A special effort should be made in the preparation of presentence reports not to burden the court with irrelevant and unconnected details.

5. *See* note 4 *supra,* at (ii)(A). The standard further expressly states: "A special effort should be made in the preparation of presentence reports not to burden the court with irrelevant and unconnected details."

6. One example is the commission of a burglary in a dwelling and the resultant traumatic psychological effect on young children residing in the dwelling who are, by the circumstances, made aware of the burglar's presence.

render them inherently prejudicial, thus obviating any question of express reliance upon them by the trial court." Although we have concluded that presentence reports should contain at least the basic statistical information pertaining to the victim, we do think that portions of "The Victim" segment of the presentence report in the case at bar were unnecessarily detailed, emotional, and not particularly relevant. Nevertheless our examination of the record, and in particular, of the sentencing proceedings, has convinced us that resentencing is not required.[7] For not every error in a presentence report requires preparation of a new report or a remand for resentencing. In this regard we find the following argument advanced by the state quite persuasive:

> The parental anguish over the loss of a daughter, which is reflected in that portion of the presentence report, could not be effectively hidden or concealed from any judge with experience in such cases, whether or not the same had been included in formal documents presented to the court.[8]

The state's analysis is a realistic one. In *Egelak v. State,* 438 P.2d 712, 715 (Alaska 1968), we said in part that "[o]ur trial judges, as a group, are more knowledgeable and experienced than is the ordinary juror in regard to homicide prosecutions."[9] There we held that it was not prejudicial error for the trial court to have examined photographs of the deceased victim's body immediately prior to sentencing. In reaching this conclusion we commented in part that "[w]e cannot presume that trial judges would permit themselves to be unduly prejudiced against defendants by virtue of having viewed photographs such as the ones at bar."[10]

Here appellant argued to the sentencing court that the questioned material relating to the victim was not relevant to the imposition of sentence. In turn Judge Kalamarides expressly stated that he accepted appellant's argument and was not relying on such information in fashioning his sentence. Our review of the sentencing hearing reveals that the superior court exclusively focused upon Sandvik's particular problems, his potential for rehabilitation and the prevention of future conduct of a similar nature on Sandvik's part in determining what it considered an appropriate sentence. We thus hold that the sentencing proceedings in the case at bar were not rendered defective because of the information contained in the presentence report regarding the victim. In short we conclude that the sentencing court was not unduly or improperly influenced by the material complained of.

■ Appellant also asserts that the superior court's sentence of twenty years' imprisonment with eight years suspended is excessive. Our standard of review when presented with a sentence appeal is to determine whether the trial court was "clearly mistaken" in imposing the sentence in

---

7. Assuming the inclusion of this questioned material in the presentence report was error, we in turn conclude that such non-constitutional error is harmless error since it can be fairly said not to have affected the result. *Anthony v. State,* 521 P.2d 486, 490 (Alaska 1974); *Love v. State,* 457 P.2d 622, 630–31 (Alaska 1969). *See In re Cornelius,* 520 P.2d 76, 84 (Alaska 1974); *Wright v. State,* 501 P.2d 1360, 1366 (Alaska 1972).

8. In the same vein the state further argues: Furthermore, the very nature of the challenged information in the presentence report suggests that the judge should have little difficulty in disregarding that information. Any judge of experience would certainly be aware that the identity of the victim of a negligent homicide is a matter of circum-

stance rather than intent. The fortuitous nature of such a circumstance renders it one which could not be an important consideration even where a judge might be willing to take it into account.

9. In this regard appellant's position is that:
Contrary to the State's assertion, appellant's position does not rest on the assumption that judges are incapable of disregarding prejudicial information. Appellant recognizes that in most cases trial judges are capable of doing so, but urges that the exceptionally inflammatory nature of the information within the presentence report renders that report manifestly unfair. [nt's reply br. p. 7]

10. *Egelak v. State,* 438 P.2d 712, 175 (Alaska 1968).

question.[11] As we indicated earlier the maximum sentence for negligent homicide is twenty years.[12] Since the superior court suspended eight years of the twenty-year sentence, the maximum sentence authorized for the crime of negligent homicide was not imposed. Nevertheless the entire period of the sentence must be considered in passing upon a claim of excessiveness.[13]

■ At the time of sentencing Sandvik was forty years old. In 1960 he separated from his wife and four children who now reside in Pennsylvania. He does maintain some contact with them by telephone and sends financial support when able to do so. He is a carpenter by trade. The record shows that Sandvik has had alcoholic problems for twenty years, and that for the last five years of this period he has been drinking excessively and has experienced periods of blacking out. He has no prior criminal record other than for offenses relating to the consumption of alcohol. Since 1961, Sandvik has had two convictions of being drunk in public, one for disorderly conduct, and one for trespassing. More serious and of particular significance here, however, are his six separate convictions, between 1961 and 1973, for operating a motor vehicle while intoxicated. In 1975, Sandvik was arrested on two separate occasions for the offense of operating a motor vehicle while

intoxicated, and these charges were pending against him when he committed the instant offense of negligent homicide on June 13, 1975.[14] According to Sandvik his drinking prior to the events of June 13, 1975, was triggered by his release from jail on bail on June 12, 1975, from a then pending operating a motor vehicle while under the influence charge.

In *Layland v. State,* 549 P.2d 1182, 1184 (Alaska 1976), we said in part:

Recent statistics indicate that thousands of innocent people are killed or seriously injured nationwide each year by automobile drivers who take to the road in spite of the fact that they are highly intoxicated. Unlike many crimes, the victim has no way of protecting himself. While vehicular homicide does not require a criminal intent, the fact that a loss of life is involved compels us to consider it among the most serious offenses. The unique nature of the offense mandates that the trial court, in fashioning a sentence, place heavy emphasis on societal condemnation of the conduct and the need to protect society.

Here in light of Sandvik's long involvement with alcohol, his extensive record of prior convictions for the offense of operating a motor vehicle while intoxicated, and the circumstances of the negligent homicide,[15]

11. *Cleary v. State,* 548 P.2d 952 (Alaska 1976); *Smith v. State,* 531 P.2d 1273, 1276 (Alaska 1975); *Torres v. State,* 521 P.2d 386, 389 (Alaska 1974); *McClain v. State,* 519 P.2d 811 (Alaska 1974); *Nicholas v. State,* 477 P.2d 447 (Alaska 1970).

12. *See* note 1, *supra,* for text of AS 11.15.080.

13. *See Spearman v. State,* 543 P.2d 202 (Alaska 1975). We noted by way of dictum that a sentence of ten years with three suspended did not constitute the maximum sentence there of ten years. *See also Andrews v. State,* 552 P.2d 150, 152 (Alaska 1976).

14. As a result of one of three convictions in 1973, Sandvik attended the Alcohol Drivers Information School, but he indicated that this treatment did not do him any good because he did not think at the time that his problem was very serious. Sandvik's remark at sentencing suggested that his attitude may have changed.

The alcoholism council suggested long-term intensive treatment.

15. The presentence report contains the following description of the offense:

Loretta McCarthey had left her home, on the Old Glenn Highway, to work at Bert's Drugstore in Palmer, Alaska. She had been called to work a shift schedule earlier than her normal schedule, and she chose to ride her bicycle rather than allow her brother to drive her. She was riding her bicycle approximately eighteen inches off of the roadway at Mile 44 when she was struck from the rear and killed almost instantly. Her body struck the hood and windshield of the defendant's automobile; she landed in the ditch. The defendant failed to stop and render aid, however, he did stop a short distance away to dispose of empty beer bottles, two full beer bottles, a glass, and a pitcher that contained a vodka and tonic mix, which the defendant had been drinking. There were no

we conclude that the superior court was not clearly mistaken in imposing the sentence it did. Although the sentence received by Sandvik is longer than any imposed for vehicular manslaughter which has previously been appealed to this court, we think that Sandvik's aggravated record of prior alcohol-related vehicular offenses, his demonstrated danger to the public, his long and extensive involvement with alcohol problems and consequent need for extensive treatment, and the circumstances of the negligent homicide preclude us from concluding that the sentence imposed was "clearly mistaken" under the criteria of *State v. Chaney,* 477 P.2d 441 (Alaska 1970), and its progeny. In our view the trial court had reasonable grounds for concluding that Sandvik was the "worst type of offender" in light of his prior convictions which we have detailed and the character of his past behavior which demonstrates conduct posing a clear risk to the public.[16]

█ Sandvik's final point at this appeal is that the presentence report was incom-

plete and inadequate as a basis for imposing sentence.[17] In support of this specification of error, appellant has asserted in part that "[t]he probation officer, in obtaining the information which he included in the report, failed to seek out any of the references supplied by appellant." Appellant alludes to that portion of the presentence report which, under the heading of "Interested Parties" reads:

> The defendant offered character references by the names of Eldin Sandvik and Bob Covington. Neither individual has contacted this office.

From this statement Sandvik concludes that the author of the presentence report totally disregarded his references and thus the lack of information from "appellant's references renders the presentence report incomplete and therefore insufficient."

What record we do have in this appeal does not bear out appellant's allegation of disregard of his references on the part of the author of the presentence report. The presentence report does contain a letter

---

indications, at the scene, to indicate that the victim had turned her bicycle into the path of the automobile approaching from the rear. The indications are that the victim was traveling approximately eighteen inches off of the roadway, and that the defendant's automobile had left the roadway and traveled approximately six feet from the roadbed prior to striking and killing Loretta McCarthey. The autopsy report indicates a negative on the blood and urine alcohol test of the victim. The State Troopers failed to administer a breathalyzer or blood alcohol test on the defendant, indicating that seven hours had passed before contact was made with him. They felt that this was too long of a time period for an accurate and a substantial report.

16. In *Godwin v. State,* 554 P.2d 453 (Alaska 1976), we affirmed a sentence of ten years with five suspended for a defendant who, while driving under the influence, had killed a teenager. Like Sandvik, Godwin had a prior history of driving offenses, although apparently none of them involved excessive use of alcohol. In addition, he had a Florida conviction of breaking and entering, but apparently he did not participate in the offense and did not know it was to take place. Considering the fact that Godwin had accepted full responsibility for the offense as well as his stable family and employment situation, we found the sentence "se-

vere," but not clearly erroneous. Further, in *Layland v. State,* 549 P.2d 1182 (Alaska 1976), we affirmed a sentence of eight years of which one-third were to be served without parole and, additionally, concurred in the trial court's recommendation that Layland be placed in an alcoholism rehabilitation program. Layland had been convicted of manslaughter as the result of an incident in which his car collided with another vehicle, killing one young man and seriously injuring two. Defendant was intoxicated at the time, and the record revealed prior encounters with the law for driving while intoxicated.

A ten-year sentence and license revocation for vehicular manslaughter involving alcohol use was affirmed in *Gullard v. State,* 497 P.2d 93 (Alaska 1972), while a mandatory sentence of one-third time before eligibility for parole was vacated on the ground that defendant was only nineteen years old. At the time of conviction, Gullard had no prior record or history of chronic alcoholism, but he was convicted of two counts of driving while intoxicated while awaiting sentencing.

17. In *State v. Chaney,* 477 P.2d 441, 443 (Alaska 1970), this court said in part:

> We are also obliged to consider . . . the sufficiency and accuracy of the information upon which [the sentence] was based. (footnote omitted)

from the probation officer to Judge Kalamarides. This letter states in part that "Mr. Covington, who was given as a character reference by Mr. Sandvik, came to my office and relayed the following information. . . . " The letter then sets forth in detail Mr. Covington's evaluation of appellant. In light of the fact that one of the two references given by appellant did contact the author of the presentence report we cannot conclude that the author of the presentence report failed to seek out the references which Sandvik furnished.

Affirmed.

BOOCHEVER, Chief Justice, dissenting.

I cannot agree with the majority's conclusion that detailed information concerning the character and activities of a victim of vehicular manslaughter was properly included in a pre-sentence report. The Sandvik report included the following details:

The victim's activities, at school, included playing trumpet in the school band and physical education activities. . . She had constructed her own water bed just two days prior to her death. Loretta missed honor roll on only two occasions at the Palmer School System and, upon completing her freshman year, she had a 2.9 grade average. Among the victim's self-giving qualities, she never judged anyone; she was always ready to assist her fellow man. On several occasions, she did socialize with Steve Huckle, a crippled boy, in order that he not feel a complete outcast. . . .

The victim was well-known and quite popular in the Palmer area. On the day of her funeral, the Palmer Drug Store closed for the first time in known history, and the victim's fifth grade teacher arrived from out of state. Three hundred or more persons attended the funeral, and the Palmer High School now wishes to erect a tomb on her behalf. The local credit union in Palmer has developed a trust fund to be given as a scholarship during the year that Loretta would have graduated.

.    .    .    .    .

[Mr. McCarthey] states that his wife has lost all emotions, and the only thing that keeps him alive is the thought that his baby daughter is with God. He still finds himself crying and, in the middle of the night, he is awakened by his wife, lying weeping and softly crying.

This information was both irrelevant to the goals and objectives of sentencing and inherently prejudicial. I therefore conclude that its inclusion in the pre-sentence report was not harmless error and would remand for resentencing by a different judge.

Certainly, sentencing should not occur in a vacuum, and the trial judge should be adequately informed of all relevant information. However, as we have stated in a somewhat different context:

The primary purpose of criminal law is to inhibit antisocial conduct by assigning appropriate punishment. As parodied by Gilbert and Sullivan in the Mikado, the object is "[t]o let the punishment fit the crime." To achieve this purpose the focus must be on the intent and conduct of the perpetrator rather than on fortuitous results.[1]

While some basic statistical information pertaining to the victim of a vehicular manslaughter is relevant, I cannot comprehend how the victim's social and charitable activities and the extent of the parents' grief can be considered as part of "the offense and the circumstances surrounding it" and therefore pertinent to sentencing. The example offered by the majority to suggest the significance of such information is unpersuasive. Obviously, the fact that children are in a house during the commission of a burglary and the harm suffered by these unintended victims are circumstances surrounding the felony. The extent of the harm caused by defendant's acts is always germane. Thus, it is also relevant that the victim of Sandvik's drunken driving was killed, rather than bruised or paralyzed.

1.  *Thessen v. State*, 508 P.2d 1192, 1197 (Alaska 1973).

Information regarding injury to the victim, however, is clearly distinguishable from information concerning the character of the victims and their "worth" to family and friends.

Use of this latter type of information distorts the sentencing process and, more importantly, suggests that courts can and should assess a defendant's wrong according to the value of the life he has taken, even though the offense does not involve an intent to harm a particular individual. Neither our rules [2] nor the American Bar Association Standards [3] provide for inclusion of this type of material. Moreover, Standard 2.3 expressly states: "A special effort should be made in the preparation of pre-sentence reports not to burden the court with irrelevant and unconnected details."

Among the oft-enumerated objects of sentencing are condemnation of the defendant and reaffirmation of societal norms.[4] At least in cases where there is no intent to harm a particular person, however, I believe that the court may more adequately consider the harm to victims as a component in reaffirming societal norms if they are not confronted with inflammatory details. There is a world of difference between presenting the basic facts necessary for the judge to be informed adequately of the circumstances surrounding the offense and including an emotion-laden narrative pertaining to the victim.

This court has previously condemned inclusion of improper materials in pre-sentence reports. In *Thurlkill v. State*, 551 P.2d 541, 544 (Alaska 1976), we stated that

elimination of improper information is a recognized goal with respect to such reports. We have also disapproved the use of unexplained police "contacts" or arrest records.[5] In those instances, at least a defendant has the opportunity to respond in an effort to correct any misinformation. Normally, no response can offset the emotional impact of poignant information pertaining to a deceased victim and survivors. Therefore, I would hold that such detailed material should not be included in pre-sentence reports and that under the circumstances of this case, it was error for the trial judge to deny the motion for a new pre-sentence report. Further, I believe it would have been preferable had the trial judge granted counsel's request for sentencing by a judge other than the one passing on the propriety of the report.

Of course, not every error in a pre-sentence report requires preparation of a new report or remand for resentencing. A non-constitutional error such as this is harmless if it can fairly be said not to have affected the result.[6] In *Thurlkill*, we held that, despite improper materials concerning police contacts in a pre-sentence report, it was not necessary to remand. Thurlkill testified at the sentence hearing about the allegations, and the trial judge did not consider the police contacts in determining the sentence.[7] Nevertheless, we warned that if the inclusion of police contacts made the pre-sentence report manifestly unfair, we would feel compelled to remand the case for resentencing.[8] We have remanded a number of cases for resentencing on the ground

**2.** *See* Criminal Rule 32(c)(2), *supra* n.3 in majority opinion.

**3.** *See* Standard 2.3, *supra* n.4 in majority opinion.

**4.** *State v. Chaney*, 477 P.2d 441, 444 (Alaska 1970).

**5.** *Thurlkill, supra* at 544; *Mattern v. State*, 500 P.2d 228, 235 (Alaska 1972); *Griggs v. State*, 494 P.2d 795, 798 (Alaska 1972); *Robinson v. State*, 484 P.2d 686, 690 n.11 (Alaska 1971); *Waters v. State*, 483 P.2d 199, 202–03 (Alaska 1971). *See Evans v. State*, 550 P.2d 830, 847 (Alaska 1976); *Layland v. State*, 549 P.2d 1182,

1183 n.5 (Alaska 1976); *Burleson v. State*, 543 P.2d 1195, 1203 (Alaska 1975).

**6.** *Love v. State*, 457 P.2d 622, 630–31 (Alaska 1969); *Anthony v. State*, 521 P.2d 486, 490 (Alaska 1974). *See In re Cornelius*, 520 P.2d 76, 84 (Alaska 1974); *Wright v. State*, 501 P.2d 1360, 1366 (Alaska 1972).

**7.** *Thurlkill, supra* at 544. *Deveroux v. State*, 548 P.2d 1296, 1298 (Alaska 1976). *Cf. Armstrong v. State*, 502 P.2d 440, 451 (Alaska 1972).

**8.** *Thurlkill, supra* at 545 n.9.

that the trial court relied on prejudicial information or impermissible inferences.[9]

Here, however, Judge Kalamarides expressly stated that he was not relying on the improper material. The judge carefully explained the reasons for his sentence, and we have no question as to the sincerity of his statement or of his genuine effort to disregard the questioned portion of the report.

Numerous cases have pointed to the fact that cautionary instructions to a jury are inadequate to overcome the prejudicial effect of certain types of evidence.[10] Judges have more experience in disregarding irrelevant or prejudicial information and are less susceptible to the persuasive influence of such materials. One case, however, has indicated that under certain circumstances, the capacity of judges, too, is limited. Considering the exclusionary rule in sentencing proceedings, the court in *United States v. Schipani*, 315 F.Supp. 253, 260 (E.D.N.Y. 1970), stated:

> An impractical rule of total suppression would almost invite self-deception by a judge forced to deny that he had considered a factor that was strongly influencing his subconscious reactions. The judge's capacity to ignore such information is probably better than a juror's, but it is limited. (citations omitted)

In my view, information furnished here is so emotionally charged as to create a lasting impression. Any person reading it would have difficulty overcoming strong feelings of sympathy and distress for the victim and her parents, as well as a sense of outrage at the defendant's conduct. We are not here dealing with prior police contacts or dismissed counts of an indictment, the type of information a judge is used to evaluating objectively. In contrast, this section of the report concludes with a picture of a bereft husband trying to comfort a wife who is "lying weeping and softly crying."

Regardless of the ability of the trial judge to overcome the subconscious as well as the conscious reaction to such material, a sentencing procedure must maintain an appearance of impartiality as well as actually being impartial. It is of importance that a defendant realize that he has been fairly sentenced.[11] A judge may be able to disregard irrelevant prejudicial material, but it is doubtful that the defendant will believe that the sentence has not been improperly motivated. Moreover, sentencing reports may follow the defendant through subsequent imprisonment procedures, including use in determining whether to grant or deny parole.

Considering all of these factors, I conclude that the error in this case cannot be regarded as harmless. In view of this conclusion, I would not reach the question of whether the sentence was excessive.

---

9. *See Donlun v. State*, 550 P.2d 369, 370 (Alaska 1976) (improper remarks by trial court concerning defendant's lifestyle and alleged commission of other crimes); *Avery v. State*, 514 P.2d 637, 646–47 (Alaska 1973) (undue emphasis on counts in indictment as to which jury unable to reach verdict); *Mattern v. State*, 500 P.2d 228, 234–35 (Alaska 1972) (consideration of prior police contacts); *Galaktionoff v. State*, 486 P.2d 919, 923–24 (Alaska 1971) (consideration of crimes not charged); *Waters v. State*, 483 P.2d 199, 202–03 (Alaska 1971) (reliance on charges which have been dismissed).

10. *See, e. g., Bruton v. United States*, 391 U.S. 123, 135, 88 S.Ct. 1620, 1627, 20 L.Ed.2d 476, 484–85 (1968) ("the practical and human limitations of the jury system cannot be ignored"); *Krulewitch v. United States*, 336 U.S. 440, 453, 69 S.Ct. 716, 723, 93 L.Ed. 790, 799 (1949) ("The naive assumption that prejudicial effects can be overcome by instruction to the jury . . . all lawyers know to be unmitigated fiction").

11. *Thurlkill, supra* at 545.