Timothy JONES, Appellant,

v.

STATE of Alaska, Appellee.

No. A–1813.

Court of Appeals of Alaska.

Sept. 25, 1987.

Christine Schleuss, Anchorage, for appellant.

Robert Miller, Asst. Dist. Atty., Dwayne W. McConnell, Dist. Atty., Palmer, and Ronald W. Lorensen, Acting Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

## OPINION

COATS, Judge.

Timothy Jones was convicted, based upon his plea of no contest, of two counts of manslaughter, a class A felony. AS 11.41.-120. As a first-felony offender, Jones was subject to a presumptive sentence of five years on each count. AS 12.55.125(c)(1). Superior Court Judge Beverly W. Cutler sentenced Jones to five years on each count and imposed these sentences consecutively. Judge Cutler ordered that Jones not be eligible for parole until completing the first sentence. Jones appeals his sentence raising several issues. We find Jones' ten-year sentence excessive. We therefore remand and order the trial court to impose a sentence of ten years with two years suspended.

While driving under the influence of alcohol, Jones allowed his vehicle to cross the highway center line where it struck two other vehicles. The accident killed two people and severely and permanently injured a third person. A subsequent blood test revealed that Jones' blood alcohol level was .155 percent. Jones was eighteen years old at the time of the accident and his only prior offense was for speeding.

Jones first argues that Judge Cutler erred in imposing consecutive sentences. Jones cites this court's decisions in *Lacquement v. State*, 644 P.2d 856 (Alaska App. 1982) and *Bolhouse v. State*, 687 P.2d 1166, 1175 (Alaska App.1984). *Lacquement* requires that where imposing consecutive presumptive terms produces an aggregate sentence exceeding the presumptive term for a single count, the sentencing court must specifically find that consecutive sentencing is necessary to protect the public. *Lacquement*, 644 P.2d at 862. Further, the trial court may not impose consecutive sentences unless the sentencing court concludes that:

> [A] total sentence for all offenses equal to or less than the presumptive term for the most serious offense [is] insufficient to deter and rehabilitate the defendant. Such a conclusion would emphasize "isolation" as a sentencing goal, and would be the equivalent of a finding that the defendant was a dangerous or professional criminal under ABA Standards.

*Bolhouse*, 687 P.2d at 1175. *Lacquement*, however, was based upon former AS 12.55.-025(e), which stated simply that the court had the power to impose sentences for two or more crimes either concurrently or consecutively. The statute did not establish any legislative preference for consecutive sentences. *See Lacquement*, 644 P.2d at 858–61. Since the *Lacquement* decision, the legislature has repealed former AS 12.-55.025(e) and replaced it with current AS 12.55.025(e) and (g). In *State v. Andrews*, 707 P.2d 900 (Alaska App.1985), we analyzed current AS 12.55.025 and concluded that AS 12.55.025(e) did not establish a legislative mandate precluding sentencing courts from imposing concurrent sentences. However, we also concluded that AS 12.55.025(e) established a legislative preference for consecutive sentences. 707 P.2d at 908–10. We believe that this legislative preference for consecutive sentences must be interpreted to expand the situations where the court may impose consecutive sentences.

Judge Cutler did not find that imposing consecutive sentences was necessary to protect the public. Rather, she

concluded that Jones' offense was so serious that consecutive sentences were necessary to reflect the crime's seriousness. In particular, Judge Cutler emphasized that two people had died in this accident and that a third person had been seriously and permanently injured. We believe that this reasoning is sufficient to support the imposition of consecutive sentences, in light of the legislative preference for consecutive sentences expressed in AS 12.55.025(e).

■ Jones next argues that Judge Cutler, at sentencing, erred in considering information which he argues was unduly prejudicial. Many people wrote letters to the court concerning the victims' deaths. These letters were included in the presentence report. In addition, the victims' mother testified at the sentencing hearing. Jones argues that the letters and testimony were prohibited under *Sandvik v. State*, 564 P.2d 20 (Alaska 1977) and *Clemans v. State*, 680 P.2d 1179 (Alaska App.1984). The *Sandvik* and *Clemans* cases caution the sentencing court not to consider highly inflammatory background and character evidence concerning a homicide victim. However, it is proper for the court to consider the impact of a person's death on family members. *Sandvik*, 564 P.2d at 23–24; *Clemans*, 680 P.2d at 1187–88. We do not believe that the information presented to Judge Cutler was so inflammatory as to exceed what is permissible under *Sandvik* and *Clemans*. We are also assured by Judge Cutler's statement, that she had considered the *Sandvik* and *Clemans* cases and would weigh the information accordingly. We find no error.

Jones also argues that Judge Cutler improperly considered Jones' parole eligibility in setting his sentence. He argues that this violated the rule of *Kelly v. State*, 622 P.2d 432 (Alaska 1981). We have reviewed Judge Cutler's sentencing remarks. We do not believe that there is any indication that Judge Cutler gave improper consideration to Jones' parole eligibility in setting his sentence.

■ Another contention on appeal is that Judge Cutler erred in not ordering a psychological evaluation for Jones. *See Bol-*

*house v. State*, 687 P.2d 1166, 1176 (Alaska App.1984). From a review of the record, it appears that the sentence imposed by Judge Cutler was not based in any way on negative assumptions about Jones that might have been rebutted by a psychological evaluation. Judge Cutler actually appears to have concluded that Jones was an excellent prospect for rehabilitation and that a lengthy prison sentence was necessary to deter others from driving while intoxicated rather than to deter Jones. We fail to see how a psychological evaluation could have been of any benefit to Jones in mitigating his sentence. We accordingly find no error.

■ Jones also challenges his sentence as being excessive. In reviewing a sentence to determine whether it is excessive, the standard which we apply is whether the sentence imposed by the trial court was clearly mistaken. *McClain v. State*, 519 P.2d 811, 813–14 (Alaska 1974). As we have stated before, at the time of this offense Timothy Jones was only eighteen years old. His only prior offense was a single speeding ticket. Balanced against this is the severity of the damage which Jones caused. Two people died and a third person was seriously and permanently injured. Judge Cutler's decision to sentence Jones to a ten-year sentence was based upon the severity of Jones' offense.

In determining whether Jones' sentence is excessive we must look to other similar cases. In *Pears v. State*, 672 P.2d 903 (Alaska App.1983), *rev'd*, 698 P.2d 1198 (Alaska 1985), the defendant was convicted of two counts of second-degree murder and one count of second-degree assault after driving while intoxicated and causing an automobile accident. Pears was highly intoxicated and was warned by uniformed police officers not to drive his car. Pears led the police officers to believe that he would not continue driving. Pears resumed driving and was warned by his companion that his driving was endangering her and other people because he was speeding and running red lights and stop signs. Pears then drove on a highway and ran through two red lights at high speed before

ultimately colliding with another vehicle, killing two of the occupants and severely injuring a third. 672 P.2d at 909, 913. At the time of the incident, Pears was twenty-years old and had no felony convictions and no convictions for driving while intoxicated or reckless driving. 672 P.2d at 911. In the three-year period before the accident, he had committed seven moving traffic violations and had been convicted of leaving the scene of an accident. 698 P.2d at 1200.

Following conviction, the trial judge sentenced Pears to serve concurrent prison terms of twenty years for the murder charges and five years for the assault. Pears appealed on the ground that his sentence was excessive. 672 P.2d at 905, 910.

After a review of former cases involving motor vehicle homicides, we stated:

> We note that in the former cases where courts have sentenced drivers who were convicted of a motor vehicle homicide to sentences in the range of ten years, a significant factor in justifying that sentence appears to be the existence of convictions for operating a motor vehicle under the influence of alcohol (now driving while intoxicated) or similar offenses. Frequently these offenses occurred after the fatal accident.

*Id.* at 911. We distinguished those former cases because the sentences had been imposed for negligent homicide and manslaughter. We approved Pears' sentence on the ground that it involved such extreme conduct and involved a finding by the jury that Pears' conduct manifested an extreme indifference to human life resulting in convictions for murder. *Id.* at 911–12.

The Alaska Supreme Court accepted a petition for hearing on Pears' case on the sentencing issue. The court rejected our analysis and held that a proper sentence should be determined by examining prior manslaughter sentences. 698 P.2d at 1202. The court found that the twenty-year sentence was clearly mistaken. Justices Matthews and Moore concluded that the maximum sentence for Pears should not exceed ten years. Chief Justice Rabinowitz declined to state what an appropriate sen-

tence would be although he joined in the court's opinion. 698 P.2d at 1205 n. 15. Justices Compton and Burke dissented, finding that the twenty-year sentence was not clearly mistaken. *Id.* at 1205.

Pears' conduct was more severe than that of Jones. Pears was convicted of murder based on the extreme facts of that case. Additionally, Pears was slightly older than Jones at the time of his offense and had a worse driving record. We interpret *Pears* as holding that a sentence in excess of ten years would be clearly mistaken in that case. We recognize that this conclusion is weakened by the fact that two justices dissented and a third justice declined to state specifically what sentence might be appropriate. Given our interpretation of the holding in *Pears*, it is difficult to justify a sentence of ten years in Jones' case.

Another case which we believe merits discussion is *Clemans v. State*, 680 P.2d 1179 (Alaska App.1984). Clemans was convicted of two counts of manslaughter. Clemans was driving while intoxicated, lost control of his car on a highway, and hit and killed two young children. His blood alcohol at the time of the collision was estimated at between .200 and .230 percent. At the time of the offense, Clemans was thirty-one years old. Within the five-year period prior to the offense, he had been convicted of five minor traffic offenses, four for moving violations and one for improper equipment. He had never been charged with, or convicted of, any criminal offense prior to the manslaughter offenses. Clemans was sentenced to serve two concurrent terms of eight years with two years suspended. We held that this sentence was not clearly mistaken. *Id.* at 1180–81. Clemans' offense is similar to Jones'. However, a major distinction is that Jones is a significantly younger offender.

While we recognize the severity of Jones' offense and the extreme necessity to deter people from driving while intoxicated, we believe that the holdings of the cases which we have discussed lead to the conclusion that Jones' sentence of ten years' imprisonment is excessive. We accordingly order

the trial court to reduce Jones' sentence to ten years with two years suspended.

The sentence is REVERSED.

SINGLETON, Judge, concurring.

I agree with Judge Coats' resolution of this case.

Jones' conduct occupies the borderline between criminal negligence and recklessness. A dispassionate review of all sentences imposed on those convicted of class A felonies establishes that a ten-year sentence is too severe for a first offender convicted of traffic manslaughter, at least in the absence of any history of traffic-related offenses or other aggravating factors. *See Huckaby v. State*, 632 P.2d 975, 976 n. 1 (Alaska App.1981) (defining the class of worst offenders convicted of automobile related offenses).

I write separately to respond to Chief Judge Bryner's dissent. First, I agree with Chief Judge Bryner that the supreme court did not establish a ten-year ceiling on drunk-driving-reckless-murder convictions in *Pears v. State*, 698 P.2d 1198 (Alaska 1985). *Pears* is significant, however, because it more clearly establishes what I believe a long line of Alaska Supreme Court decisions have suggested, that a substantial sentence—which I understand to mean a sentence in excess of five years—cannot be justified on the basis of three of the *Chaney* sentencing criteria: rehabilitation, general deterrence, or reaffirmation of community norms. *Id.* at 1204. *See also State v. Chaney*, 477 P.2d 441, 443–44 (Alaska 1970).

While the supreme court did not, in *Pears*, spell out what it meant by a substantial sentence, past decisions of the court make it clear that a sentence in the range of five-to-ten years is substantial. *See, e.g., Donlun v. State*, 527 P.2d 472 (Alaska 1974). It would appear to follow, that sentences in excess of five years should rest on the sentencing goal of isolation, which in turn requires some basis in the record for determining that a person cannot be rehabilitated or deterred by a lesser sentence. *Larson v. State*, 688 P.2d 592, 599 (Alaska App.1984).

In this case, Judge Cutler was convinced that Jones did not need to be incarcerated for the protection of the public, for his deterrence, or for his rehabilitation. She sentenced him to consecutive five-year terms solely for purposes of general deterrence and affirmation of community norms. Such a sentence, in my view, cannot be reconciled with prior decisions of the Alaska Supreme Court. If a sentence in the range of five years will not deter someone, then it is unlikely that a greater sentence would. By the same token, a sentence of five years will virtually always assure the community that the laws are being enforced and that people are not being allowed to get away with serious offenses. There are, to be sure, individuals who have established by a consistent pattern of criminal behavior that they cannot be deterred or rehabilitated within a five-year period. For these individuals, and in my view for these individuals alone (in the absence of a longer presumptive term), longer sentences may be justified.

This view is consistent with the presumptive terms actually established. A person convicted of a class A felony is subject to a presumptive five-year term, which may be aggravated or mitigated in conformity with AS 12.55.155. Instructively, certain aggravated first offenses are subject to a seven-year term, but this term is inapplicable to manslaughter. AS 12.55.125(c)(1). In contrast, the legislature has set a ten-year term for a person convicted of a class A felony if he or she has previously been convicted of a felony. AS 12.55.125(c)(3). Thus, the legislature has indicated the relative importance it assigns to aggravated first-felony offenses and second-felony offenses, thereby reiterating a standard theme underlying presumptive sentencing: that severe sentences should be reserved for those with past proven criminal behavior. Jones does not fit into this category.

Finally, I disagree with Chief Judge Bryner that the court's power to impose consecutive sentences somehow justifies a total sentence that could not otherwise be

justified.[1] In my view, the question of what total sentence is appropriate in light of *Chaney,* and whether to impose sentences consecutively or concurrently, are totally independent questions. Where a judge is called upon to sentence an individual for a number of independent crimes at the same time, he or she should determine an appropriate overall sentence taking into account each crime, the surrounding circumstances, the defendant's background and any aggravating or mitigating factors. *See, e.g., Waters v. State,* 483 P.2d 199, 202 (Alaska 1971) (court held that a sentence that might appear excessive when viewed in isolation might be appropriate in light of the total sentence imposed for multiple crimes). *See also Larson,* 688 P.2d at 599. From this I infer that the trial judge should not focus on individual offenses, determine an appropriate sentence. for each offense, and then either stack them or run them concurrently as a matter of whim. Rather, the court should determine an appropriate *overall* sentence and then impose that sentence in either concurrent segments or consecutive increments, as the court may choose.

In my view, *Lacquement v. State,* 644 P.2d 856 (Alaska App.1982), simply recognizes the independence of the two questions, (1) what total sentence is appropriate and, (2) should that total sentence be comprised of consecutive increments or concurrent segments. In response, *Lacquement* holds that a sentence that would be inappropriate when viewed as a sentence for the most serious offense, does not automatically become appropriate simply because it is comprised of multiple sentences that were imposed consecutively. *Id.* at 861–62. I therefore disagree with the suggestion in Judge Coat's majority opinion that amendments to AS 12.55.025(e) legislatively overrule *Lacquement.* The amended statute has substituted a preference for consecutive sentences in place of the prior statute's preference for concurrent sentences. Nevertheless, whether sentences are imposed consecutively or concurrently, *Waters* appears to require that the total sentence be justified by the defendant's total conduct evaluated in the light of his or her background. *See* 483 P.2d at 201–02. In addition, *Lacquement* requires that the composite sentence including consecutive increments, not exceed the presumptive term for the defendant's most serious offense unless the total sentence is necessary to protect the public. 644 P.2d at 860. While Jones' deterrence and isolation might satisfy *Lacquement,* general deterrence and reaffirmation of societal norms cannot.

BRYNER, Chief Judge, dissenting.

I cannot agree that the sentence imposed by the superior court is precluded under *Pears v. State,* 698 P.2d 1198 (Alaska 1985). The majority of the court reads *Pears* to compel a sentencing ceiling of eight years for first felony offenders convicted of multiple death drunken driving manslaughters. This reading of *Pears* is purely conjectural.

Two members of the supreme court in *Pears* concluded that the maximum term in that case should not exceed ten years to serve. Two other members would have affirmed the twenty-year term originally imposed. The fifth member of the court, Justice Rabinowitz, while concluding that a twenty-year term was excessive, expressed no view on what an appropriate sentence might be. *Pears,* 698 P.2d at 1205 n. 15.

In the present case, the majority apparently assumes that Justice Rabinowitz would not have approved a sentence of more than ten years. Both legally and logically, however, Justice Rabinowitz' decision to refrain from deciding on an appropriate sentence should be taken at face

---

1. *State v. Dunlop,* 721 P.2d 604 (Alaska 1986), is not to the contrary. It holds, in line with the great weight of authority, that multiple convictions and multiple punishments for multiple incidents of homicide do not offend the double jeopardy clauses of the state and federal constitutions. *Dunlop* does not address an appropriate sentence where a single accident, resulting from reckless or negligent behavior, causes multiple deaths and injuries. In *State v. Andrews,* 707 P.2d 900, 910 (Alaska App.1985), *aff'd,* 723 P.2d 85 (Alaska 1986), we suggested that multiple offenses could justify incrementally more severe sentences than individual offenses, but would not justify multiplying an appropriate sentence by the number of separate offenses.

value: it should be considered to give rise to no inference whatsoever. The majority's attempt to second guess the court in *Pears* is ill-considered and bypasses the central issue in this case: whether the sentence imposed below is clearly mistaken.

In this regard, it is notable that, since deciding *Pears*, the Alaska Supreme Court has rendered two decisions of particular significance to the present case. In *State v. Andrews*, 723 P.2d 85 (Alaska 1986), the court recognized that the legislature, in enacting AS 12.55.025(e) and (g), expressed a preference for consecutive sentences in the case of offenders convicted of violent crimes involving more than one victim. And in *State v. Dunlop*, 721 P.2d 604 (Alaska 1986), the court for the first time approved the imposition of separate convictions and sentences in cases like the present one, where a single, reckless act results in more than one death.

The supreme court's opinions in *Andrews* and *Dunlop* weigh heavily in favor of a finding that the sentence imposed in this case is not clearly mistaken. Yet, inexplicably, the majority of this court continues to regard *Pears* as the last word on the issue, and sees it as a foregone conclusion that, whatever else *Andrews* and *Dunlop* may have done, they did not alter the bottom line in *Pears*.

*Pears* is neither so rigid nor restrictive. The law of sentencing, like the law in general, is not static. I see nothing in *Pears* that weds our sentencing law irrevocably and in perpetuity to a maximum term of eight years for first offenders convicted of multiple victim drunken driving manslaughters.

Applying the principles of *Dunlop* and *Andrews*, the superior court in this case imposed a logical, balanced, and appropriate sentence. That sentence may be somewhat higher than many sentences imposed in prior cases, where other sentencing principles were applied. That is not to say that the sentence is clearly mistaken. It is not.