**Vicki Ann PUSICH, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. A–5441.**

Court of Appeals of Alaska.

Nov. 24, 1995.

Hearing Denied Jan. 19, 1996.

Ray R. Brown, Dillon & Findley, Anchorage, for Appellant.

Cynthia M. Hora, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Bruce M. Botelho, Attorney General, Juneau, for Appellee.

Before BRYNER, C.J., and COATS and MANNHEIMER, JJ.

*OPINION*

MANNHEIMER, Judge.

Vicki Ann Pusich was sentenced to a total of 25 years' imprisonment with 7 years suspended (18 years to serve) for the crimes of manslaughter, AS 11.41.120(a), and first-degree assault, AS 11.41.200(a). She appeals this sentence, contending that it is excessive. We affirm.

*The Facts Underlying Pusich's Offenses*

In the summer of 1993, Pusich was experiencing marital difficulties. To cope with these difficulties, Pusich turned to alcohol.

Pusich drank heavily during the week preceding the Fourth of July. On Tuesday or Wednesday evening (June 29th or 30th), Pusich's close friend Delfina Walker found Pusich's vehicle parked in Walker's driveway. Pusich was passed out in the front seat, the keys in the ignition. On Wednesday or Thursday night (June 30th or July 1st), Pusich took Walker on a trip to Wasilla. During this trip, Pusich drove at speeds of up to 90 miles per hour and was passing other vehicles recklessly. Walker repeatedly told Pusich to slow down—that her driving was scaring Walker. Pusich assured Walker that she "was fine" and that she would stop driving so recklessly—but she continued to drive in this reckless manner. After they arrived in Wasilla, Walker tricked Pusich into giving her the keys to Pusich's car, so it was Walker who drove them home to Anchorage. However, during this return trip, Pusich con-

stantly demanded that Walker leave the highway and drive to a bar so that Pusich could get a drink; Pusich also stretched out her leg from the passenger seat and pushed down on the gas pedal when she thought that Walker was not driving fast enough.

On Thursday night (July 1st), Pusich's husband warned her to stop drinking and driving. According to Walker, who overheard the conversation, Pusich's husband told Pusich that "she was never going to learn until she ended up killing somebody".

At the end of work on Friday afternoon (July 2nd), Pusich announced to a co-worker that she intended "to go to a liquor store and drink herself into a stupor". Pusich began to drink again on Sunday morning, July 4th. Pusich spent that afternoon and evening at Walker's house. Pusich had called Walker to ask if she could come over; Pusich explained that her husband had come home early from a camping trip, and she did not wish to be around him. Walker was going to a picnic that day, but she told Pusich that she was welcome to let herself into the house. (Pusich knew where the spare key was hidden.)

During the afternoon and evening, Walker called Pusich several times to check on her. From talking to Pusich, Walker could tell that she was drinking. Walker repeatedly made Pusich promise to stay at Walker's residence and not to drive anywhere. Pusich, however, broke her word and started driving from Anchorage to Wasilla.

During this drive, Pusich exhibited extreme recklessness, weaving in and out of traffic, tailgating other cars, and traveling at speeds of up to 90 miles per hour. She apparently was drinking beer as she drove: beer bottles, both empty and full, were found in Pusich's vehicle.

Just south of Wasilla, Pusich either tried to pass on a right-hand curve or else inexplicably failed to negotiate the curve. She drove straight ahead, neither braking nor veering, crossing two lanes of traffic to hit a car in which four people were traveling: Mark and Nancy Langley, their son Brian, and thirteen-year-old Jamie Farr. Mark Langley and Jamie Farr were killed at the scene. Brian Langley was taken by helicop-

ter to an Anchorage hospital, where he died of his injuries. Nancy Langley was critically injured but survived.

A grand jury indicted Pusich on three counts of second-degree murder, AS 11.41.110(a)(2) (causing death through conduct manifesting extreme indifference to the value of human life), and one count of first-degree assault, AS 11.41.200(a)(1) (recklessly causing serious physical injury by means of a dangerous instrument).[1] Pusich and the State later reached a plea agreement; under this agreement, Pusich pleaded no contest to a single consolidated count of manslaughter (charging three deaths), AS 11.41.120(a), and to first-degree assault.

### Pusich's Background

Pusich is not a youthful offender; she was 37 years old at the time of these offenses. Pusich has a long-standing alcohol problem. In the past, she has attended treatment at the Salvation Army's Clitheroe Center and has participated in Alcoholics Anonymous meetings. She nevertheless returned to drinking.

Pusich has a history of drunk-driving offenses. In 1978, in Oregon, Pusich ran her car into a concrete highway divider at a speed of approximately 78 miles per hour; her breath test result was .22 percent. She was convicted of driving while intoxicated. Pusich was convicted of DWI again in Oregon in 1985, when she was stopped for weaving along the road and crossing the center line; her breath test result on this occasion was .25 percent.

In between her two DWI convictions, Pusich was convicted in 1984 of driving with a suspended license. Further, Pusich was charged with failing to appear in connection with her 1985 DWI charge. Pusich failed to attend a hearing on an order to show cause; a bench warrant was issued for her arrest, which remained outstanding at the time of the pre-sentence report in this case.

Pusich also has a lengthy history of other traffic violations which did not lead to criminal convictions. Beginning in 1977, Pusich's operator's license was repeatedly revoked for various periods of time: for speeding (1977), for failing to obey a traffic signal (1977), for failing to report an accident (1979), for refusing to take a breath test (1979), for driving without lights (1980), for failing to obey a traffic signal (1983), for failing to appear at a hearing (1983), for failing to obey a traffic signal (1984), for failing to appear at a hearing (1984), and for failing to take a breath test (1985).

### The Sentencing

Pusich's offenses, manslaughter and first-degree assault, are both class A felonies. AS 11.41.120(b); AS 11.41.200(b). The maximum sentence for a class A felony is 20 years' imprisonment. AS 12.55.125(c). Because Pusich was a first-felony offender, the presumptive term for each of her offenses was 5 years' imprisonment. AS 12.55.125(c)(1); *Pruett v. State*, 742 P.2d 257, 262–63 (Alaska App.1987).

Superior Court Judge Beverly W. Cutler found that the State had proved four aggravating factors under AS 12.55.155(c): (c)(4)—that Pusich employed a dangerous instrument (an automobile) in furtherance of the offense; (c)(6)—that Pusich's conduct had created a risk of imminent injury to three or more persons; (c)(10)—that Pusich's conduct was among the most serious within the definition of manslaughter; and (c)(21)—that Pusich had a history of repeated violations of criminal laws similar in nature to her present offenses.

For the offense of manslaughter (which encompassed three deaths), Judge Cutler sentenced Pusich to 18 years' imprisonment with 5 years suspended (13 years to serve). For the offense of first-degree assault, Judge Cutler sentenced Pusich to 7 years' imprisonment with 2 years suspended (5 years to serve). Judge Cutler imposed these sentences consecutively. Thus, Pusich's composite sentence is 25 years' imprisonment with 7 years suspended—18 years to serve.

Judge Cutler realized that this sentence was more severe than any vehicular homicide

---

1. Pusich was also charged, by information, with driving while intoxicated and possession of a small amount of marijuana. These charges are not at issue in this sentence appeal.

sentence that had been affirmed on appeal in Alaska, but she concluded that Pusich's case was more aggravated than any of the reported cases. She based this conclusion on Pusich's driving history, the failure of Pusich's prior alcohol treatment and counseling, Pusich's extreme recklessness, and the serious consequences of that recklessness.

Judge Cutler concluded that Pusich's underlying problem was her addiction to alcohol, and the judge saw little prospect of Pusich's overcoming this problem. Judge Cutler noted that Pusich had failed to benefit from past treatment and rehabilitative efforts.

Judge Cutler additionally found that Pusich's degree of recklessness verged on the type of extreme recklessness that would constitute second-degree murder (extreme indifference to the value of human life). The judge found that Pusich had consciously engaged in "wild driving for a lengthy period of time". Moreover, Judge Cutler noted, Pusich engaged in this drunken driving "in a headstrong fashion", consciously disregarding the advice and warnings of family and friends.

*Pusich's Challenges to the Aggravating Factors and her Challenge to Judge Cutler's Finding that She was a Worst Offender*

■ Pusich argues that Judge Cutler was clearly erroneous when she found that the State had proved aggravating factor (c)(10)— that Pusich's conduct was among the worst included within the definition of manslaughter. She contends that Judge Cutler was wrong to characterize her manslaughter as among the most serious based on the fact that the single manslaughter count consolidated three deaths. However, in *Curl v. State*, 843 P.2d 1244, 1245 (Alaska App.1992), this court upheld a finding of aggravator (c)(10) when the defendant pleaded no contest to a single count of sexual abuse, based on the fact that the single count represented one of a series of 20 to 25 incidents of abuse, some of which involved multiple acts of abuse. And in *Monroe v. State*, 752 P.2d 1017, 1021 (Alaska App.1988), this court upheld a finding of aggravator (c)(10) based on the fact that the defendant's arson had endangered a large number of people (rather than the one person minimally necessary to constitute the offense of first-degree arson). We conclude that Judge Cutler could properly consider the fact that Pusich's manslaughter count charged three deaths.

Moreover, Pusich's brief to this court neglects to mention or challenge Judge Cutler's finding that Pusich's culpable mental state (her degree of recklessness) approached the culpability of second-degree murder. This finding, too, was sufficient to support aggravating factor (c)(10). *See Benboe v. State*, 698 P.2d 1230, 1232 (Alaska App.1985). For these reasons, we uphold Judge Cutler's finding that Pusich's conduct was among the most serious within the definition of manslaughter.

■ Pusich alternatively argues that, assuming Judge Cutler properly found aggravator (c)(10), the other three aggravating factors should not have been considered separately from aggravator (c)(10). Pusich cites this court's opinion on rehearing in *Juneby v. State*, 665 P.2d 30, 34 (Alaska App.1983):

> To the extent that AS 12.55.155(c)(10) serves as a catch-all within which a number of other more specific aggravating factors are simply accumulated, it is not truly separate from and independent of its component parts. Thus, in order to insure that the same factors are not relied upon twice to increase a presumptive term, in such instances the sentencing court should assess the significance of the specific aggravating factors by treating them as components of the more general finding that the defendant's conduct was among the most serious within the definition of the offense.

However, having reviewed Judge Cutler's findings in light of the record in this case, we do not agree with Pusich that aggravator (c)(10) served simply as a summation of the other three aggravating factors.

Judge Cutler found aggravator (c)(10) based on the fact that Pusich's manslaughter conviction encompassed three homicides, as well as on the fact that Pusich's culpable mental state verged on the culpable mental state for the next higher degree of homicide,

second-degree murder. Aggravator (c)(21) was based on Pusich's extensive history of motor vehicle offenses, many of them alcohol-related. Aggravator (c)(6) was based on the fact that Pusich's conduct—her "wild driv[e]" from Anchorage to Wasilla—endangered dozens if not hundreds of people. And aggravator (c)(4) was based on the fact that Pusich used an automobile as an instrument of destruction. For these reasons, we find no error in Judge Cutler's separate consideration of the four aggravating factors.

■ Finally, Pusich challenges Judge Cutler's apparent finding that Pusich was a "worst offender". Because Judge Cutler did not impose a maximum sentence on Pusich, no such finding was necessary. Thus, Pusich's argument is moot.

*Pusich's Sentence*

■ Pusich contends that her composite sentence of 18 years to serve (25 years with 7 suspended) is excessive when compared to other sentences for vehicular homicide that have been reviewed by this court and by the supreme court. Pusich's sentence is, in fact, higher than any other reviewed sentence in this category of offenses.[2] However, "[s]entencing is an individualized process". *Burleson v. State*, 543 P.2d 1195, 1202 (Alaska

1975). Moreover, the "clearly mistaken" test that governs sentence review in Alaska

> implies a permissible range of reasonable sentences which a reviewing court, after an independent review of the record, will not modify[.] Although "permissible range of reasonable sentences" has never been precisely defined, it is obviously a function in any particular case of such considerations as the presence of aggravating factors, the psychological make-up of the defendant, the need for isolation, and the sentences imposed in comparable cases[.]

*State v. Bumpus*, 820 P.2d 298, 305 (Alaska 1991) (internal quotations and citations omitted).

■ Further, because the legislature is the branch of government primarily entrusted with the task of defining crimes and prescribing punishments, *see Dancer v. State*, 715 P.2d 1174, 1179 & n. 4 (Alaska App.1986), the range of reasonable sentences envisioned by the "clearly mistaken" test must be anchored in the sentencing range established by the legislature for the offense in question. The "particular facts of the individualized case [must be examined] in light of the total range of sentences authorized by the legislature for the particular offense". *State v. McPherson*, 855 P.2d 420, 422 (Alaska 1993)

2. The following cases contain the most severe sentences for vehicular homicide that have been subjected to appellate review in Alaska. They are listed in reverse chronological order.

*Puzewicz v. State*, 856 P.2d 1178 (Alaska App. 1993): This court affirmed a sentence of 18 years' imprisonment with 5 years suspended—13 years to serve—for two counts of second-degree murder; the defendant killed two people and injured three others.

*Ratliff v. State*, 798 P.2d 1288 (Alaska App. 1990): This court affirmed a sentence of 13 years' imprisonment with 3 years suspended—10 years to serve—for one count of second-degree murder.

*Barney v. State*, 786 P.2d 925 (Alaska App. 1990): This court affirmed a sentence of 14 years' imprisonment with 4 years suspended—10 years to serve—for one count of manslaughter and one count of second-degree assault.

*Jones v. State*, 744 P.2d 410 (Alaska App.1987): This court reversed a sentence of 10 years' imprisonment for two counts of manslaughter and directed that the defendant be sentenced to no more than 8 years; the defendant killed two people and injured a third.

*State v. Dunlop*, 721 P.2d 604 (Alaska 1986): The supreme court affirmed a sentence of 10 years (two consecutive 5-year terms) for two counts of manslaughter. However, from the wording of the decision, it appears that the defendant attacked the sentence solely on the ground that his two separate convictions violated the double jeopardy clause.

*Pears v. State*, 698 P.2d 1198 (Alaska 1985): The supreme court reversed a sentence of 20 years' imprisonment for two counts of second-degree murder and one count of second-degree assault.

*Rosendahl v. State*, 591 P.2d 538 (Alaska 1979): The supreme court affirmed a sentence of 10 years' imprisonment for one count of manslaughter.

*Sandvik v. State*, 564 P.2d 20 (Alaska 1977): The supreme court affirmed a sentence of 20 years' imprisonment with 8 years suspended—12 years to serve—for one count of manslaughter.

*Gullard v. State*, 497 P.2d 93 (Alaska 1972): The supreme court affirmed a sentence of 10 years' imprisonment for one count of manslaughter; the defendant killed four people.

(quoting *State v. Wentz*, 805 P.2d 962, 965 (Alaska 1991)).

 Thus, the fact that Pusich's sentence is higher than any other reviewed sentence for vehicular homicide does not necessarily mean that her sentence is excessive. The aim of sentence review is not to achieve complete uniformity in sentencing, but rather to achieve reasonable uniformity and to eliminate unjustified disparity. AS 12.55.005; *Burleson*, 543 P.2d at 1202. When assessing Pusich's sentence, we must consider the offenses for which she was convicted, the conduct underlying those offenses, the nature of Pusich's criminal history, and her potential for rehabilitation. Then, using the sentencing goals first announced in *State v. Chaney*, 477 P.2d 441, 443–44 (Alaska 1970), and now codified in AS 12.55.005, we must evaluate these factors, weighing them within the range of sentences established by the legislature for Pusich's offenses.

To insure against unjustified sentencing disparity, we must take into account "the sentences imposed in comparable cases". *Bumpus, supra*. Past sentencing decisions supply an historical record of "sentencing practices for specific types of offenses"; this record can "provide realistic, experientially based sentencing norms for guidance in future cases". *Williams v. State* (opinion on rehearing), 809 P.2d 931, 933 (Alaska App. 1991) (quoting *McPherson v. State*, 800 P.2d 928, 933 (Alaska App.1990) (Bryner, C.J., concurring and dissenting)). However, the fact that lesser sentences have been affirmed for vehicular homicide does not mean that these sentences constitute the limit of sentencing discretion:

> [O]ur affirmance of a sentence on appeal means only that we conclude the sentence is not excessive; it does not set a ceiling on sentences in similar cases, nor does it necessarily mean that we would not have affirmed a greater sentence in the appeal being litigated.

*Hurn v. State*, 872 P.2d 189, 199–200 (Alaska App.1994). Therefore, although cases affirming vehicular homicide sentences are important to our inquiry, we must pay special attention to those cases in which sentences for vehicular homicide have been found excessive. There are two such cases, *Pears v. State* and *Jones v. State*.

(a) *Cases Reversing Vehicular Homicide Sentences*

In *Pears v. State*, 698 P.2d 1198 (Alaska 1985), the defendant drove even after being warned by a police officer that he was too drunk to drive. Pears drove at high speed through two red lights and finally collided with another car. He killed two occupants of this car and injured a third. 698 P.2d at 1199. Convicted of two counts of second-degree murder and one count of second-degree assault, Pears was sentenced to serve a total of 20 years' imprisonment. *Id.* at 1199–1200.

Pears was 20 years old. He had no prior felony convictions, no prior convictions for DWI, and no prior convictions for reckless driving. He did, however, have seven moving violations in the previous three years, and he had also been convicted of leaving the scene of an accident after he hit a vehicle in a parking lot and then drove away. *Id.* at 1200.

At the time of Pears's appeal, 12 years was the longest sentence of imprisonment for vehicular homicide subjected to appellate review in Alaska. That 12–year sentence had been imposed in *Sandvik v. State*, 564 P.2d 20 (Alaska 1977).

The defendant in *Sandvik* was convicted of manslaughter under Alaska's former criminal code. Driving drunk, Sandvik inexplicably left the road and killed a bicyclist who was cycling alongside the highway. 564 P.2d at 25 n. 15. Sandvik was 40 years old; he had been battling alcoholism throughout his adult life. He had six prior convictions for driving while intoxicated, and he was awaiting trial on two more DWI charges at the time of the homicide. *Id.* at 25.

The superior court sentenced Sandvik to 20 years' imprisonment with 8 years suspended. *Id.* The supreme court upheld this sentence:

> Although the sentence received by Sandvik is longer than any imposed for vehicular manslaughter which has previously been appealed to this court, we think that Sand-

vik's aggravated record of prior alcohol-related vehicular offenses, his demonstrated danger to the public, his long and extensive involvement with alcohol problems and consequent need for extensive treatment, and the circumstances of the ... homicide preclude us from concluding that the sentence imposed was "clearly mistaken" under the criteria of *State v. Chaney*, 477 P.2d 441 (Alaska 1970), and its progeny.

*Sandvik*, 564 P.2d at 26.

Pears's 20–year sentence was considerably more severe than Sandvik's. Three members of the supreme court concluded that it was too severe. The majority opinion declared that Pears's 20–year sentence was clearly mistaken because "Pears's conduct [was] generally comparable to that of the defendant[ ] in [*Sandvik* ], and his record of prior offenses is better". *Pears*, 698 P.2d at 1203.[3]

As noted, Pears killed two people and injured a third, while Sandvik killed only one person. Given the different amount of human destruction wrought by these two defendants, the *Pears* majority's assertion that Pears's conduct was "generally comparable" to Sandvik's conduct may seem surprising. However, at the time *Pears* was decided, Alaska law declared that when a person recklessly endangered human life, that person's criminal liability was the same whether the reckless conduct resulted in one death or many. The Alaska Supreme Court had held in *Thessen v. State*, 508 P.2d 1192 (Alaska 1973), that one act of recklessness could support only one homicide conviction, no matter how many people the defendant killed. 508 P.2d at 1197.

But in 1986 (a little over one year after *Pears* was decided), the Alaska Supreme Court reversed *Thessen* in a case called *State v. Dunlop*, 721 P.2d 604 (Alaska 1986). The defendant in *Dunlop* had been drinking in a bar. After becoming extremely intoxicated, Dunlop drove a car. He struck and killed two pedestrians at a nearby intersection. 721 P.2d at 605. The supreme court renounced the reasoning of *Thessen* and declared that a defendant who, by an act of recklessness, killed more than one person should be held to have committed a separate criminal homicide for each victim:

> The *Thessen* reasoning is flawed. By focusing on [the accused's lack of a specific intent to kill], *Thessen* ignores the gravamen of the offense of manslaughter and, by analogy, of assault. The [manslaughter] statute prohibits causing the death of another person.... When several deaths or injuries occur in the course of a single incident, the *offense* prohibited by the statute has been [committed] several times over. The identity of [each separate victim] represents different conduct—it represents conduct directed at that victim.... Instead of focusing on the accused's intent, we must look at the consequences.

*Dunlop*, 721 P.2d at 609 (emphasis in the original).

■ *Dunlop* undermined a major foundation of the sentencing decision in *Pears*. After *Dunlop*, in the context of determining the proper sentence for vehicular homicide, the act of killing several people and injuring others can no longer be deemed "generally comparable" to Sandvik's act of killing one person. Along with the degree of recklessness manifested by the defendant and the defendant's criminal history, a sentencing court can and should consider the seriousness of the consequences of the defendant's actions.

The other appellate decision reversing a vehicular manslaughter sentence is *Jones v. State*, 744 P.2d 410 (Alaska App.1987). The defendant in *Jones* was an 18–year–old with one prior speeding conviction. He drove while intoxicated, crossed the center line of the highway, and killed two people and permanently injured a third. 744 P.2d at 411. Jones pleaded no contest to two counts of manslaughter; he was sentenced to two con-

---

**3.** The supreme court split 3 to 2 over whether to reverse Pears's sentence. Two members of the majority declared that Pears should receive no more than 10 years to serve. The third member of the majority held simply that 20 years was excessive; he declined to specify a lesser sentence. *Pears*, 698 P.2d at 1205 n. 15. The dissenters would have affirmed the 20–year sentence. *Id.* at 1205.

secutive 5-year terms—a total of 10 years to serve. *Id.* By a vote of 2 to 1, this court reversed Jones's sentence and directed the superior court to impose no more than 10 years with 2 suspended (8 years to serve). *Id.* at 413–14.

The *Jones* case produced three opinions. Judge Coats, writing for the court, interpreted *Pears v. State* as setting a limit of 10 years' imprisonment for vehicular homicide. Judge Singleton concurred in the decision to reverse Jones's sentence, although he rejected Judge Coats's interpretation of *Pears.* Instead, Judge Singleton believed that a "dispassionate review" of past case law "establishe[d] that a ten-year sentence is too severe for a first offender convicted of traffic manslaughter, at least in the absence of any history of traffic-related offenses or other aggravating factors". *Jones,* 744 P.2d at 414. In fact, Judge Singleton asserted, the sentencing goals of rehabilitation, general deterrence, and reaffirmation of community norms could never, by themselves, justify a sentence of more than 5 years' imprisonment. Any lengthier sentence would have to be based solely on the sentencing goal of isolation. *Id.*

Chief Judge Bryner, dissenting, rejected the idea that *Pears* established a 10-year ceiling on vehicular homicide sentences. *Jones,* 744 P.2d at 415–16. He further pointed out that the supreme court's decision in *Dunlop* had weakened the precedential value of *Pears.* *Jones,* 744 P.2d at 416. Judge Bryner declared that he would affirm Jones's 10-year sentence. *Id.*

The legal reasoning underlying the majority opinions in *Jones* is no longer valid. Judge Coats's interpretation of *Pears*—that it established a 10-year ceiling on vehicular homicide sentences—has been disavowed by the supreme court itself. *State v. Wentz,* 805 P.2d 962, 966 n. 5 (Alaska 1991). *See also State v. Bumpus,* 820 P.2d 298, 302 (Alaska 1991); *Puzewicz v. State,* 856 P.2d 1178, 1181 (Alaska App.1993). And Judge Singleton's suggestion that isolation was the only sentencing goal that could justify a lengthy sentence was rejected by this court in *Ratliff v. State,* 798 P.2d 1288, 1293 n. 3 (Alaska App. 1990). These later judicial events have con-

siderably diminished the precedential value of this court's sentencing decision in *Jones.*

*(b) Cases Affirming Vehicular Homicide Sentences*

We now address the appellate decisions that have affirmed lengthy sentences for vehicular manslaughter. We have already discussed the supreme court's decision in *Sandvik:* to reiterate, the supreme court upheld a sentence of 20 years' imprisonment with 8 years suspended (12 years to serve) for a defendant convicted of one count of manslaughter. Sandvik killed a single person, but he had a lengthy history of DWI offenses.

The supreme court has also twice affirmed a sentence of 10 years' imprisonment for vehicular manslaughter. In *Gullard v. State,* 497 P.2d 93 (Alaska 1972) (per curiam), the court upheld a 10-year sentence for a youthful defendant (19 years old) who drove while intoxicated, killed four people, and was convicted of a single consolidated count of manslaughter. And in *Rosendahl v. State,* 591 P.2d 538 (Alaska 1979), the court affirmed a 10-year manslaughter sentence for a defendant who drove while intoxicated and killed one person. Rosendahl had two prior convictions for driving while intoxicated, as well as five speeding convictions. *Id.* at 539.

Turning to the decisions of this court, in *Barney v. State,* 786 P.2d 925 (Alaska App. 1990), this court upheld a sentence of 10 years to serve for a vehicular homicide/assault under Alaska's current criminal code. The defendant in *Barney* sped south on Minnesota Drive, weaving in and out of traffic at speeds of 70 to 75 miles per hour, toward the area where Minnesota Drive turns into O'Malley Road. Barney then drove through a red light at the intersection of O'Malley and C Street, striking a car. He killed the driver and seriously injured the passenger. 786 P.2d at 925. Barney pleaded no contest to manslaughter and second-degree assault. *Id.* The superior court sentenced him to a composite sentence of 14 years' imprisonment with 4 years suspended (10 years to serve). *Id.* at 926.

Barney was 26 years old. He had no prior felonies, but he had "an extensive record of

traffic violations and his license ha[d] been suspended on numerous occasions". *Id.* at 925–26. These traffic offenses included numerous speeding violations, negligent driving and reckless driving convictions, and three instances in which Barney attempted to elude a police officer after being signaled to stop. *Id.* at 925.

In affirming Barney's sentence, this court noted that Barney, at 26 years of age, was significantly older than Pears (who was 20) or Jones (who was 18), and that he had a "substantial record of driving offenses". *Id.* at 927. This court concluded that the egregiousness of Barney's conduct "approximate[d] Pears' conduct" and "was clearly more serious than Jones['s]". *Id.* at 927. This court found that Barney's conduct of "eluding police officers, racing down the highway, and running red lights" demonstrated Barney's "callousness and irresponsibility", and that Barney's "record of recidivism in life-threatening reckless driving" justified the superior court in concluding that "Barney needed to be isolated for the protection of the public". *Id.* at 927 & n. 1.

In *Ratliff v. State,* 798 P.2d 1288 (Alaska App.1990), the defendant drank alcoholic beverages and smoked marijuana, then started driving home. Veering into the oncoming lane, he forced one car off the road into a snowbank and almost forced another car off the road. Then Ratliff drove the wrong way up an exit ramp onto a divided highway. For two miles, Ratliff sped down the highway against the flow of traffic, forcing vehicles to swerve out of his path, oblivious to the efforts of other drivers to alert him to the peril. Finally, Ratliff drove head-on into another car, killing the driver. *Id.* at 1289.

A jury convicted Ratliff of second-degree murder. Ratliff had one prior DWI conviction. *Id.* at 1292. This court affirmed Ratliff's sentence of 13 years' imprisonment with 3 years suspended (10 years to serve). *Id.* at 1293.

In *Puzewicz v. State,* 856 P.2d 1178 (Alaska App.1993), the defendant went to a bar with the avowed purpose of getting drunk. After several hours of drinking, and despite a friend's entreaties not to drive, Puzewicz drove intoxicated, crossed the center line, and struck an oncoming car, killing the driver and one passenger and seriously injuring three other passengers. He pleaded no contest to two counts of second-degree murder (in exchange for the State's dropping the three counts of first-degree assault). *Id.* at 1179.

Puzewicz had three prior DWI convictions. He had no right to be driving at all, because his license had already been suspended until the year 2000. His blood alcohol level was .219 percent. *Id.* at 1179.

The superior court sentenced Puzewicz to 18 years' imprisonment with 5 years suspended (13 years to serve). This court affirmed that sentence. We noted that, in contrast to the defendant in *Pears,* Puzewicz was not a youthful offender with a clean record. Rather, he was a mature defendant with a record of DWI convictions and failed attempts at alcohol treatment. *Id.* at 1181. Moreover, the facts of Puzewicz's offense were egregious. *Id.* at 1182.

(c) *Application of these Precedents to Pusich's Case*

■ This survey of prior cases reveals that both the supreme court and this court have affirmed sentences of 10 to 13 years' imprisonment for vehicular homicide. More important, this survey discloses certain salient factors that the courts have deemed significant in drunk-driving homicides: the degree of the defendant's recklessness, the magnitude of the consequences of the defendant's conduct, the age of the defendant, the defendant's record of past offenses, and the defendant's record of alcohol abuse. When Pusich's case is evaluated in light of these factors, it is readily apparent that all these facets of Pusich's case point toward a severe sentence.

Pusich is not a youthful offender. She has a long history of alcoholism. Pusich has gone through alcohol treatment, but she returned to drinking. She has a history of drunk-driving offenses. Further, she fled the scene of an accident in Oregon, and she also failed to appear in court for a show cause hearing, both acts evidencing a disregard for the law.

Pusich's present offense was the culmination of a week-long drinking binge in which Pusich's announced intent was "to drink herself into a stupor". During this time, both Pusich's closest friend and Pusich's husband warned her against driving. On the day of the homicides, Pusich's friend knew that Pusich was drunk and made her promise not to go anywhere. Nevertheless, Pusich decided to drive from Anchorage to Wasilla.

During this drive, Pusich exhibited extreme recklessness, weaving in and out of traffic, tailgating other cars, and traveling at speeds of up to 90 miles per hour. At the site of the collision, Pusich inexplicably failed to negotiate a curve; she drove straight ahead, without braking or veering, and hit the car in which the victims were traveling. Judge Cutler found that Pusich's degree of recklessness approached "extreme indifference to the value of human life", the culpable mental state required for second-degree murder.

When we compare Pusich's case to the previous Alaska decisions in this area, we find that her recklessness is among the most egregious, her record is among the worst, and the results of her conduct are among the most extreme—Pusich killed three people and seriously injured a fourth. Having reached this conclusion, we next must analyze Pusich's case within the sentencing range established by the legislature for Pusich's offenses.

Pusich was convicted of one consolidated count of manslaughter and one count of first-degree assault. Both of these offenses are class A felonies. AS 11.41.120(b); AS 11.41.200(b). The maximum sentence for a class A felony is 20 years' imprisonment. AS 12.55.125(c). Because Pusich was a first-felony offender, the presumptive term for each of her offenses was 5 years' imprisonment. AS 12.55.125(c)(1); *Pruett v. State*, 742 P.2d 257, 262–63 (Alaska App.1987). Because Judge Cutler found aggravating factors, she was authorized to sentence Pusich to any term up to the 20–year maximum. AS 12.55.155(a)(2).

 This court has cautioned that even when aggravating factors are present, a sentencing judge must still take the presumptive term as the point of departure. Presumptive sentencing was established to further the legislative goal of achieving reasonable uniformity and eliminating unjustified disparity in sentencing. *See* AS 12.55.005. A significant upward adjustment of the presumptive term should be made only when the aggravating factors, judged in light of the *Chaney* sentencing criteria, show the defendant's case to be significantly more serious than the typical offense within the definition of the crime for which the defendant is being sentenced. *Juneby v. State*, 641 P.2d 823, 835 & n. 21, 838 (Alaska App.1982), *modified on rehrg.*, 665 P.2d 30, 32–33 (Alaska App.1983); *State v. Chaney*, 477 P.2d 441, 443–44 (Alaska 1970).

For the offense of manslaughter (which encompassed three deaths), Judge Cutler sentenced Pusich to 18 years' imprisonment with 5 years suspended—13 years to serve. When we compare this sentence to the 12–year term upheld in *Sandvik* for a manslaughter defendant with a similarly bad record who caused only one death, we conclude that Pusich's manslaughter sentence is not clearly mistaken. We similarly find no error in the sentence Pusich received for first-degree assault (7 years with 2 suspended—5 years to serve).

 Our analysis of Pusich's sentence does not end there, however. Judge Cutler imposed Pusich's two sentences consecutively; under these circumstances, Alaska law directs us to focus on the justification for Pusich's composite sentence rather than on the justification for any individual sentence she received for a particular offense. *Neal v. State*, 628 P.2d 19, 21 n. 8 (Alaska 1981); *Comegys v. State*, 747 P.2d 554, 558–59 (Alaska App.1987).

Pusich's composite sentence, 25 years' imprisonment with 7 years suspended, is more severe than any previously affirmed sentence for vehicular homicide. Nevertheless, we conclude that the facts of this case support the sentence.

Pusich's recklessness was egregious. She has a lengthy history of driving offenses—in particular, alcohol-related driving offenses. Her long-standing abuse of alcohol is seem-

ingly intractable. More alarming, Pusich has repeatedly demonstrated an obstinate insistence on driving when she is drunk. Not only does Pusich drive while she is intoxicated, but the record shows that she has a propensity for driving at high speeds and engaging in maneuvers that would be extremely reckless even if she were sober.

For these reasons, Pusich's offense would have been significantly aggravated even if she had killed or injured only one victim. Instead, Pusich killed three people and seriously injured a fourth. Under the facts of this case, applying the "clearly mistaken" standard of sentence review, we conclude that Pusich's sentence is within the "range of reasonable sentences which a reviewing court, after an independent review of the record, will not modify". *State v. Bumpus,* 820 P.2d at 305 (quoting *McClain v. State,* 519 P.2d 811, 813 (Alaska 1974)).

Our colleague Judge Coats dissents from this conclusion. In his dissent, Judge Coats discusses Alaska's prior sentencing decisions involving drunk-driving homicides. He concludes that Pusich's sentence must be excessive because (1) lesser sentences were imposed in those prior cases, and (2) "those cases deal with offenders and offenses virtually indistinguishable from [Pusich's] case".

It is on this point that Chief Judge Bryner and I fundamentally disagree with Judge Coats. After *Dunlop,* it is no longer possible to maintain that the killing of one person is "virtually indistinguishable" from the killing of several people. Alaska law now recognizes that a drunk driver who kills several people has committed several separately punishable homicides.

In *Sandvik,* the supreme court upheld a 12–year prison sentence for a drunk driver who killed one person. Pusich's act of killing three people and seriously injuring a fourth is not "virtually indistinguishable" from Sandvik's act of killing one person; rather, Pusich's criminal act is significantly more aggravated.

Only two reported Alaska decisions, *Gullard* and *Puzewicz,* involve drunk drivers who inflicted the same amount of human carnage as Pusich. The defendant in *Gul-*

*lard* killed four people. He received 10 years to serve. However, even though the results of Gullard's conduct are analogous to the results of Pusich's, two factors distinguish Gullard's case from Pusich's. First, Gullard did not exhibit Pusich's extreme degree of recklessness. Second, Gullard's background was considerably more favorable: Gullard was a teenager with no prior record.

The defendant in *Puzewicz* killed two people and injured three others. Like Pusich, Puzewicz was middle-aged and his driving record was atrocious. *Puzewicz* thus presents the closest factual analogy to Pusich's case. Puzewicz was sentenced to 18 years' imprisonment with 5 years suspended—13 years to serve. We upheld this sentence on appeal. However, as we explained before, the fact that we uphold a sentence on appeal does not mean that this sentence constitutes the upper limit of sentencing discretion. *Hurn,* 872 P.2d at 199–200.

When we compare Puzewicz's 13–year sentence with the 12–year sentence imposed in *Sandvik,* it is apparent that *Puzewicz* was not intended to set the upper limit on sentences for multiple drunk-driving homicides. Both the defendant in *Sandvik* and the defendant in *Puzewicz* had particularly bad driving records, but Sandvik killed only one person. The supreme court held that it was proper to sentence Sandvik to serve 12 years (20 years with 8 suspended). Puzewicz killed two people and seriously injured three others, yet he received only one more year to serve (and a lesser total sentence). Given these circumstances, our affirmance of Puzewicz's 13–year sentence can not be read to mean that we would have overturned any greater sentence.

We therefore disagree with Judge Coats's assertion that the sentences upheld in *Gullard* and *Puzewicz* constitute the top of the range of permissible sentences for drunk-driving homicide. While Pusich's sentence is more severe than any other sentence previously upheld for a drunk driver who caused multiple deaths and injuries, her sentence is supportable under Alaska sentencing law.

The sentencing decision of the superior court is therefore

AFFIRMED.

BRYNER, Chief Judge, concurring.

I join in Judge Mannheimer's opinion but add several words to address the dissent. Citing the need to consider this case in relation to other similar offenses, *Williams v. State*, 809 P.2d 931, 935 (Alaska App.1991), the dissent compares Pusich's sentence to sentences reviewed in prior drunk-driving homicide sentence appeals. The dissent asserts that "many of those [prior] cases deal with offenders and offenses virtually indistinguishable from the present case." Because no sentence comparable to Pusich's has ever been upheld in a drunk-driving homicide case, the dissent concludes Pusich's sentence is excessive.

This reasoning makes sense only if we accept the dissent's tacit premise that victims are essentially irrelevant—that a driver who recklessly kills one innocent victim is the same as one who kills two or three. For how else is it possible to conclude, as does the dissent, that Pusich's case is "virtually indistinguishable" from most prior reported drunk-driving homicide cases, when these cases include many single-victim homicides, a handful of double homicides, but only one instance involving more than two deaths.

The notion that an offender who kills three victims should be deemed "virtually indistinguishable" from an offender who kills one victim is at odds with common sense. As a matter of Alaska law, however, this notion held sway for a time in the narrow field of reckless homicide cases. The supreme court's legal analysis in *Thessen v. State*, 508 P.2d 1192 (Alaska 1973), divorced the consequences of a reckless act from the conduct comprising the recklessness itself; on that basis, the *Thessen* court held that a reckless course of conduct causing multiple deaths involved only a single criminal act and was punishable as only one homicide.

As Judge Mannheimer's opinion correctly points out, when the Alaska Supreme Court decided *Pears v. State*, 698 P.2d 1198 (Alaska 1985), the law of reckless homicide was governed by *Thessen*. Given *Thessen*, it was legally accurate—though perhaps counter-intuitive in common sense terms—for the supreme court in *Pears* to observe that Pears' conduct, which involved a double homicide, was comparable in seriousness to the conduct in *Sandvik v. State*, 564 P.2d 20 (Alaska 1977), which involved but a single killing.

As Judge Mannheimer further correctly points out, a year after deciding *Pears*, the supreme court changed the equation by deciding *State v. Dunlop*, 721 P.2d 604 (Alaska 1986). *Dunlop* overruled *Thessen*, unequivocally holding that, in reckless homicide cases, "[t]he identity of [each separate] victim represents different conduct—it represents conduct directed at that victim." *Id.* at 609. By remarrying the consequences of a reckless act to the reckless act itself, *Dunlop* reestablished the integral link between these two components of reckless misconduct—a link readily accepted in related areas of the law.[4] Under *Dunlop*, the conduct of a drunk driver who recklessly kills two victims is inherently more serious than the conduct of a drunk driver who engages in a similar act of driving but kills only one victim, since the consequence of the recklessness—the number of victims—is a component part of the reckless conduct itself.

Given *Dunlop*, I find astonishing the dissent's cavalier assertion that Pusich's case is "virtually indistinguishable" from many of Alaska's prior drunk-driving homicide cases.[5]

---

4. For example, an offender who drives while intoxicated and recklessly causes an accident that results in no physical injury may be guilty of nothing more than DWI. AS 28.35.030. But if the same act of driving resulted in the death of another motorist, the offender is held accountable for manslaughter. *See* AS 11.41.120(a). The driving in both situations is identical; they differ only in the consequences they entail. Based on this difference in consequences alone, the law recognizes and readily accepts that the second

offender's recklessness is far more serious than that of the first.

5. Carrying the dissent's reasoning to its logical extreme, one might as easily conclude that Pusich's conduct is "virtually indistinguishable" from the conduct of many DWI offenders whose recklessness creates an extreme risk but who fortuitously avoid causing death or injury; one might thus reason that Pusich deserves a sen-

The distinguishing feature of Pusich's case lies precisely in the harm that she inflicted: she killed three innocent victims and seriously injured a fourth. Killing three people hardly seems "indistinguishable" from killing one or two; the distinction is fairly obvious.

The toll from Pusich's criminal misconduct—three dead, one seriously injured—is all but unprecedented in the annals of Alaska drunk-driving homicide cases; this alone sets her case apart from all others but one. Moreover, the egregious recklessness of Pusich's driving—in both its duration ·and extent—rivals that of any prior Alaska drunk-driving homicide case. Finally, Pusich's lengthy history of similar driving by itself ranks her among the very worst offenders. When the harm inflicted by Pusich is considered in conjunction with the nature and scope of her recklessness and her extensive background of similar misconduct, her case becomes truly unique.

Given the totality of the circumstances in this case, the dissent's effort to invoke uniformity as a basis for reversing Pusich's sentence is misguided: Pusich's case is comparable to those of past offenders in only the most superficial and artificial sense.

COATS, Judge, dissenting.

It is impossible to defend Mrs. Pusich's crime and difficult not to agree with the severe punishment that the superior court ordered in this case. However, fundamental fairness requires this court to insure that Mrs. Pusich's sentence is consistent with sentences of similar offenders who have committed similar crimes. This is a basic requirement of the law governing sentencing. Alaska Statute 12.55.005(1) requires courts, in determining an appropriate sentence, to consider "the seriousness of the defendant's

present offense in relation to other offenses[.]" In *Williams v. State*, 809 P.2d 931 (Alaska App.1991), we pointed out that "[p]aragraph (1) of AS 12.55.005 thus expressly mandates that a court seeking to determine an appropriate sentence in a given case make its decision by considering the case before it in relationship to other cases." *Id.* at 935.

Unfortunately, the facts of Mrs. Pusich's case are far from unique. Every informed citizen is aware of the tragedies caused by those who drink, drive, and kill. The majority decision does an excellent job of setting out the facts of the reported cases. Many of those cases deal with offenders and offenses virtually indistinguishable from the present case.[6] And yet, as the majority opinion recognizes, Mrs. Pusich's sentence is far more severe than any previously reported sentence in this jurisdiction. The most severe sentence that the appellate courts of this state have approved for this type of offense is eighteen years with five years suspended for two counts of second degree murder in *Puzewicz v. State*, 856 P.2d 1178 (Alaska App. 1993).

In light of this background, Mrs. Pusich's sentence appears to me to be too severe when I compare it to sentences for similar offenders who have committed similar crimes. I accordingly conclude that, under the law as it presently exists, it is the duty of this court to find that the sentence imposed in this case is clearly mistaken.

---

tence comparable to the typical sentence for an aggravated non-injury DWI.

**6.** Many of these cases involved multiple victims and multiple charges. *See, e.g., Gullard v. State*, 497 P.2d 93 (Alaska 1972); (defendant plead nolo contendere to one count of manslaughter where his drinking and driving recklessly had resulted in the deaths of four people); *Pears v. State*, 698 P.2d 1198 (Alaska 1985) (defendant

was convicted of two counts of second degree murder and one count of second degree assault); *Puzewicz v. State*, 856 P.2d 1178 (Alaska App. 1993) (defendant was convicted of two counts of second degree murder where defendant had killed two people and injured three others); *Jones v. State*, 744 P.2d 410 (Alaska App.1987) (defendant was convicted of two counts of manslaughter where his drunk driving killed two people and permanently injured a third).