**Roy K. FOXGLOVE, Jr., Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. A–5160.**

Court of Appeals of Alaska.

Jan. 3, 1997.

Larry Cohn, Anchorage, for Appellant.

Cynthia M. Hora, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Bruce M. Botelho, Attorney General, Juneau, for Appellee.

Before BRYNER, C.J., and COATS and MANNHEIMER, JJ.

MANNHEIMER, Judge.

On the morning of January 1, 1993, Roy K. Foxglove, Jr., was driving his snow machine at high speed through and around the village of Selawik. He was intoxicated from a night of New Year's celebration. Foxglove struck a twelve-year-old boy, seriously injuring the boy's ankle. Foxglove stopped and told the boy to go home, then drove on. Several people (including Foxglove's brother) warned Foxglove that he was too intoxicated to drive. He ignored them. One-half hour later, Foxglove intentionally drove his snow machine at a speed of 70 miles per hour through a crowd of people gathered around a bonfire. He killed one person (a child) and seriously injured four other people (three children and one adult).

For his actions, Foxglove was convicted of one count of manslaughter and five counts of first-degree assault. AS 11.41.120(a)(1); AS 11.41.200(a)(1). He received a composite sentence of 25 years' imprisonment with 6 years suspended (19 years to serve). Foxglove appeals this sentence, contending it is excessive. We affirm the sentence.[1]

Foxglove's offenses—manslaughter and first-degree assault—are class A felonies with maximum sentences of 20 years' imprisonment. AS 11.41.120(b); AS 11.41.200(b); AS 12.55.125(c). Foxglove was a first felony offender; he therefore faced a presumptive term of 5 years' imprisonment for each of his crimes. AS 12.55.125(c)(1)-(2); *Pruett v. State*, 742 P.2d 257, 262–63 (Alaska App. 1987) (holding that a 5–year presumptive term applies to first felony offenders convicted of first-degree assault under AS 11.41.200(a)(1)).

Superior Court Judge Michael I. Jeffery found that Foxglove's first crime (striking the twelve-year-old boy) was a typical first-degree assault. The judge therefore sentenced Foxglove to the 5–year presumptive term. However, with respect to Foxglove's five later crimes (the death and injuries he inflicted at the bonfire), Judge Jeffery found that the State had proved three aggravating factors under AS 12.55.155(c): (c)(6)—that Foxglove had created a risk of harm to three or more people; (c)(21)—that Foxglove had a history of similar conduct; and (c)(10)—that Foxglove's conduct was among the worst included within the definition of manslaughter and first-degree assault. Foxglove does not contest any of these aggravators.

Foxglove had two prior convictions for driving while intoxicated. In July 1990, Foxglove was arrested in Seward; he had been weaving down the road in a Ford van, driving at night with his lights off. His blood alcohol level was .22 percent. Foxglove pleaded no contest and was sentenced to 45 days with 42 days suspended. One of his conditions of probation was that he submit to screening for

---

1. This is our second consideration of Foxglove's case. In our prior decision, *Foxglove v. State*, Memorandum Opinion No. 3042 (Alaska App., December 14, 1994), we remanded Foxglove's case to the superior court for reconsideration of his sentence. Foxglove was resentenced, and his case is now before us again.

alcohol treatment. Foxglove refused to do this.

In April 1991, Foxglove was again arrested for DWI after he crashed his snow machine. He pleaded no contest and was sentenced to 65 days with 45 days suspended. He was also ordered to pay restitution to a woman whose sled he had run into, and he was again ordered to report to alcohol screening. Foxglove never reported to jail to serve his sentence; the court had to issue a bench warrant for his arrest. He further refused to pay the restitution, and he never reported to the alcohol screening program.

With respect to Foxglove's history of similar assaults, Judge Jeffery found that Foxglove had used his snow machine to commit an assault on several villagers in the winter of 1991. The villagers were crossing the ice on the Selawik River, walking home from a bingo game. Foxglove chased after them at high speed, drove in circles around the group, and then "dusted" them—that is, he intentionally made high-speed passes at the villagers, steering his snow machine within a few feet of them, so that they were covered with the plume of snow thrown up by the speeding vehicle.

In concluding that Foxglove's conduct was among the most serious within the definition of manslaughter, Judge Jeffery found that Foxglove had committed second-degree murder because he had manifested extreme indifference to the value of human life. In addition, Judge Jeffery concluded that even when Foxglove's offense was compared to other vehicular homicides charged as second-degree murders, Foxglove's offense was still among the most serious. Judge Jeffery noted that all the reported cases of vehicular second-degree murder involved "accidents". That is, the defendants in those cases, despite their extreme recklessness, had not purposefully collided with or purposefully run over their victims. Judge Jeffery found that Foxglove had purposefully run over his victims, and therefore his conduct was significantly more blameworthy:

> [T]here's a distinction between what happened out on the river in Selawik … and somebody running a red light…. [N]o one [has] shown me a [prior] case of some-

body using a vehicle to ram people, deliberately ram them. And that's what this case is about.

Based on Foxglove's conduct and his history of vehicular assaults and recklessness, Judge Jeffery found that Foxglove was a worst offender. *See State v. Wortham*, 537 P.2d 1117, 1120 (Alaska 1975). Nevertheless, Judge Jeffery credited defense testimony that Foxglove had made serious attempts to rehabilitate himself in prison. The judge concluded that a maximum sentence for manslaughter would not be justified; he therefore sentenced Foxglove to 20 years' imprisonment with 6 years suspended (14 years to serve). However, Judge Jeffery imposed this manslaughter sentence consecutively to Foxglove's 5–year term for injuring the twelve-year-old boy.

For the four first-degree assaults stemming from the incident at the bonfire, Judge Jeffery sentenced Foxglove to concurrent terms of 10 years' imprisonment with 5 years suspended. The judge stated that he had originally intended to impose some additional prison time for these first-degree assaults, but upon reflection he concluded that Foxglove's composite sentence (19 years to serve) was the appropriate amount of prison for Foxglove's crimes.

■ On appeal, Foxglove asserts that his composite sentence is disproportionate to the sentences imposed on other defendants convicted of vehicular homicide, even those found guilty of second-degree murder. To evaluate this assertion, we must examine the degree of Foxglove's recklessness, the consequences of his conduct, his age, his record of criminal conduct, and his record of alcohol abuse. *Pusich v. State*, 907 P.2d 29, 38 (Alaska App.1995).

Foxglove argues that his recklessness was no greater than that of the defendants in *Pears v. State*, 698 P.2d 1198 (Alaska 1985), *Pusich, supra*, and *Puzewicz v. State*, 856 P.2d 1178 (Alaska App.1993)—defendants who, like Foxglove, ignored explicit warnings that they were too drunk to be driving. However, as Judge Jeffery pointed out, Foxglove's conduct was aggravated not only because he ignored warnings not to drive, but

also because he purposefully ran over his victims. Neither *Pears* nor *Pusich* nor *Puzewicz* nor any other prior Alaska decision deals with a defendant like Foxglove who purposefully aimed his vehicle at a group of unsuspecting people and plowed into their midst at high speed.

Not only did this conduct constitute second-degree murder, but it approached the culpability of first-degree murder. Even if Foxglove had been convicted of second-degree murder, this conduct would qualify him for an aggravated sentence. *See State v. Krieger*, 731 P.2d 592, 596 (Alaska App.1987) ("a person who commits second-degree murder under circumstances approximating first-degree murder may receive an aggravated sentence" above the 20– to 30–year benchmark established in *Page v. State*, 657 P.2d 850, 855 (Alaska App.1983)).

Foxglove points out that he killed only one person, while the defendants in *Pears*, *Pusich*, and *Puzewicz* killed two or three victims. However, even though Foxglove killed only one person at the bonfire, he inflicted serious, long-term injuries on four others. Although Judge Jeffery decided to give Foxglove concurrent prison terms for these four first-degree assaults (*i.e.*, he decided not to increase Foxglove's time in prison on account of these four assaults), Judge Jeffery explicitly stated that he reached this decision only because Foxglove's composite term of 19 years to serve already adequately took into account these other consequences of Foxglove's actions.

Further, Foxglove was being sentenced for two separate criminal episodes: his act of hitting the twelve-year-old boy, and his later act of ramming the crowd of people at the bonfire. These incidents occurred approximately one-half hour apart. For the manslaughter and the four first-degree assaults at the bonfire, Foxglove received a total of 14 years to serve. Because Foxglove's earlier assault on the boy was a separate episode, Judge Jeffery concluded that Foxglove should receive a consecutive sentence (the presumptive 5–year term) for that offense.

■ When a defendant is sentenced for several crimes at once, we "focus on the justification for [the defendant's] composite sentence rather than on the justification for any individual sentence [the defendant] received for a particular offense". *Pusich*, 907 P.2d at 39 (citing *Neal v. State*, 628 P.2d 19, 21 n. 8 (Alaska 1981)); *Comegys v. State*, 747 P.2d 554, 558–59 (Alaska App.1987). Foxglove argues that his earlier act of injuring the twelve-year-old boy should be treated, for sentencing purposes, as simply another injury resulting from his drunken driving on the morning of January 1, 1993.

Foxglove concedes that his commission of two separate assaultive acts "is certainly relevant". But he argues that the earlier incident is significant only because it gave Foxglove "reason to know that his conduct was endangering the safety of others". Viewed in this way, Foxglove contends, his act of striking and injuring the boy was merely the physical equivalent of the verbal warnings given to the defendants in *Pears*, *Pusich*, and *Puzewicz*.

When a person ignores a warning that he is too drunk to drive, he may demonstrate foolishness and recklessness, and he may be guilty of driving while intoxicated. But when that person recklessly strikes and seriously injures another human being, he commits first-degree assault. Foxglove essentially argues that, if such a driver decides to leave his injured victim behind and continue to drive drunk, then this first assault should merge for sentencing purposes with the punishment the driver receives for later killing or injuring someone else. We reject this argument. Rather, we agree with Judge Jeffery that, because Foxglove was guilty of two separate assaultive episodes, his case is materially different from those cases in which vehicular homicide defendants were sentenced for killing and/or injuring several people in one incident.

We conclude that Foxglove's sentence is not clearly mistaken. *McClain v. State*, 519 P.2d 811, 813–14 (Alaska 1974). Accordingly, the sentencing decision of the superior court is AFFIRMED.